324 So.2d 746 (1975)
H.K. PORTER COMPANY, INC.
v.
BOARD OF SUPERVISORS OF JACKSON COUNTY et al.
No. 48379.
Supreme Court of Mississippi.
December 15, 1975.
*747 Joe A. Moore, Charles W. Ford, Pascagoula, Ross R. Barnett, Jackson, Jack J. Gilbert, Pittsburgh, Pa., for appellant.
A.F. Summer, Atty. Gen. by Mary Libby Payne, Asst. Atty. Gen., Jackson, Karl Wiesenburg, Carl Megehee, Pascagoula, for appellees.
Before PATTERSON, INZER and WALKER, JJ.
INZER, Justice:
H.K. Porter Co., Inc. brought suit in the Chancery Court of Jackson County against Jackson County, Jackson County Port Authority and the State of Mississippi seeking to confirm its title in fee simple to 204 acres of land lying east and south of the mouth of Bayou Casotte ship channel in Jackson County which had been conveyed to it by Jackson County and the Jackson County Port Authority, together with approximately 100 acres immediately south thereof which it claimed by accretion.
The bill of complaint alleged that Porter had first leased about 404 acres from Jackson County and its port authority on March 1, 1957, and subsequently it acquired fee simple title together with all riparian rights, accretion and accretions by deed from the same parties on November 3, 1961. It was alleged that thereafter Porter had conveyed 204 acres of the property to the north to a third party. It further alleged that approximately 100 acres of land had accreted to the south boundary of the property.
The State of Mississippi answered and denied that Porter had any claim, title and interest in the land claimed by accretion. The state admitted the execution of the lease and deed by Jackson County but denied the validity thereof. By a cross bill *748 the state joined in the cross bill of Jackson County and Jackson County Port Authority and asserted that the land claimed by accretion was public land reclaimed from the Mississippi Sound and asked the court to enter a decree confirming that such land belonged to the State of Mississippi subject to it being granted for public purposes.
Jackson County and Jackson County Port Authority answered and denied Porter's ownership in fee simple of the land described in the bill of complaint, denied the correctness of the description of such land, and denied the deraignment of title except they admitted the execution of the deed. They denied that Porter had any right, title or claim to the land which it claimed by accretion, asserting that it had been reclaimed by dredging operations in the construction of the canal for port purposes. They admitted the execution of the lease and deed and the subsequent conveyance of the north portion to a third party. They averred that Porter had ceased to use the land in question for industrial purposes which violated the express provisions of the deed conveying title to Porter, and that because of such breach, Porter was not entitled to confirm its title, but that Jackson County and the port authority were entitled to reacquire such lands for port purposes. They also averred that the land had been conveyed to Porter for a nominal consideration less than the market value and denied that Porter was entitled to any relief.
By a cross bill, Jackson County and Jackson County Port Authority alleged that the deed conveying title to Porter contained a covenant requiring that such land be used for industrial purposes and the lands now claimed by Porter were not being used for such purposes and such non-use constituted a breach of the covenant and the cross complainants reacquire such land for public purposes upon payment of the reasonable compensation.
Porter answered the cross bill and denied that it had ceased to use the 217 acres for industrial purposes. It admitted that it had sold its plant and the land upon which it was situated to Cochrem Company, but contended that the use of that part of the property by Cochrem constituted a continual use of the property in question for industrial purposes. It denied that the cross complainants had any right to reacquire the property for port purposes because of the provisions of Section 7605-06, Mississippi Code 1942 Annotated, which prohibits cross-complainants from reacquiring the property by eminent domain.
The record in this case showed that in 1954 the legislature authorized Jackson County to issue $2,000,000 in bonds in order to obtain funds to develop Bayou Casotte as a port and industrial area and to purchase land for industrial and port purposes. The county proposed to dredge a deep water channel extending from the mouth of Bayou Casotte several miles to connect with the Pascagoula Canal and to develop a deep water port. In 1955 bonds were issued, and in 1956 Jackson County acquired the land now in question along with other land from J.S. Delmas by purchase in settlement of an eminent domain suit.
In 1956, the Jackson County Port Authority was organized pursuant to the provisions of Chapter 199, of the Regular 1956 Session of the Legislature. This act provided that the counties bordering the Mississippi Sound which had heretofore issued bonds for the purpose of dredging canals could create county port authorities and could acquire lands which could be used for industrial purposes.
On March 1, 1957, Jackson County and Jackson County Port Authority leased to Porter for a period of ninety-nine years, the 404 acres of the land acquired from Delmas. By the terms of this lease the port authority and the county agreed that they would maintain a deep water canal at least 200 feet wide with a minimum depth of 30 feet in Bayou Casotte, would place an earthen dike on the west and south *749 boundary of the land leased, and would fill the land to approximately six feet above sea level with drainage towards the east. As consideration for the lease Porter paid $80,800 and agreed to construct an industrial plant at a cost of at least $1,000,000. The lease contained a clause for reversion in case of default by Porter or the county. The county and the port authority agreed that in the event the legislature authorized them to convey title to the land they would convey the land to Porter for an additional consideration of $1,000.
To dredge the channel, the county had to obtain permission from the U.S. Corps of Engineers. The Corps of Engineers designated certain areas in which the spoils would be deposited. The area nearest the land leased to Porter is the land now claimed by Porter by accretion. The county built the dike as required by the lease and deposited spoils from the canal as required by the lease. After this was done no other spoils were deposited on the land leased to Porter.
In 1961 the legislature by amendment to Chapter 199, Laws of 1956, authorized Jackson County and the Port Authority to convey land by deed. Accordingly, pursuant to the provision in the lease the county executed a deed to Porter for the same land that it had originally leased to it.
Prior to the time the deed was executed, the Army Corps of Engineers took over the maintenance of the canal and it was deepened from 30 to 40 feet. The engineers used the same spoil areas that it had designated, and at the time the deed was executed, an island had been formed from the spoils. This island was separated from the lands conveyed to Porter by several hundred feet. As the dredging continued the island was increased in size. Prior to Hurricane Camille in 1969, this island was still separated from Porter's land. Sometime after the hurricane, the island and the Porter lands became connected.
In 1971, Porter conveyed the northern 200 acres of land together with its manufacturing plant to Cochrem Company, who is now operating the plant. Porter retained the 204 acres of land on which no improvements were ever constructed. Porter is not now using the lands for industrial purposes and has no plans to so use the land in the future, but has been attempting to sell the same. The port authority and the county being in need of land for port purposes entered into negotiations with Porter to reacquire the land, but could not agree on the price. Porter then filed this suit and for the first time claimed the land created by the spoils dredged from the Mississippi Sound by accretion.
The chancellor, after a lengthy hearing, found from the evidence that there was no natural or artificial accretions to the fast lands of Porter, but the lands described as accretions were all built up by spoils from the bottom of the Mississippi Sound and any accretions that finally touched the fast lands were accretions to the initial island built up by the spoils.
The chancellor further found that the deed executed to Porter was valid; that its execution was in accordance with the original lease; and that the execution was merely a ministerial act once its execution became authorized by the legislature. The chancellor also found that the statute had been substantially complied with and that a reversionary clause could not be read into the deed.
However, the chancellor found that the legislature had no authority to convey away the sovereignty of the state and its political subdivisions so as to forever preclude it from exercising eminent domain to take property for public use. The chancellor further construed the statute to mean at the most that the county and the port authority were prohibited from retaking lands that were being used for industrial purposes and that the land in question was not being so used. A decree was entered *750 confirming the title to Porter to the 204 acres of land included in its deed, subject to the covenant that it could be used for industrial purposes and subject to the right of the county and port authority to exercise eminent domain under the proper proceedings against Porter for any part of the land not so being used for industrial purposes.
From this decree Porter appeals contending (1) that the trial court was in error in holding that it had not acquired title to the land claimed by accretion; (2) that the court erred in declaring void that part of Section 7605-06, Mississippi Code 1942 Annotated which prohibited the county and port authority from retaking by eminent domain the lands that had been conveyed to an industry in accordance with such section; and (3) that the court lacked jurisdiction to pass on the question of the county or port authority's right to reacquire Porter's land by condemnation.
The state cross appealed contending among other things that the court was in error in confirming title in Porter because neither the county nor the port authority complied with the mandatory provisions of the statute relative to the execution of the deed.
The county and port authority also cross appealed contending that the chancery court was in error in holding that Porter was entitled to confirm title in fee simple to lands not used by Porter for port industrial purposes, and in holding that they did not revert to the county under the provisions of Chapter 65, Local and Private laws of the Extraordinary Session 1954, which required that any such lands not used for port purposes should revert to the county. The State of Mississippi also makes this same contention in its assignment of error on direct appeal.
We find no merit in Porter's contention that the chancery court was in error in failing to hold that it acquired title to the 100 acres claimed as accretions to its fast lands. Porter cites and relies upon, among other cases, Bonelli Cattle Co. v. Arizona, 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973); Moore v. Kuljis, 207 So.2d 604 (Miss. 1967); Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962), and State of Alabama v. Gill, 259 Ala. 177, 66 So.2d 141 (1953), as applicable to the case at bar.
Harrison County v. Guice, supra; Moore v. Kuljis, supra; and State of Alabama v. Gill, supra; are authority for the proposition that when artificial accretions are cast upon the land of a landowner by either the Corps of Engineers or some stranger without the intervention of the upland owner such artificial accretion inures to the title of the upland owner. These cases correctly announce the law, but do not fit the facts in the case before us. Bonelli Cattle Co. v. State of Arizona, supra, is not in point as to the law or the facts.
The undisputed proof in this case is that at the time the deed was executed to Porter an island had already been formed in the Mississippi Sound by spoils deposited by the county and later by the Corps of Engineers. It is conceded that the land so formed belonged to the State of Mississippi. At that time the island was at least 500 feet from the earthen dike on the south boundary of appellant's leased land. The proof further shows that as the spoils were deposited in this area the size of the island was increased. After the dike was built and the spoils were deposited on the Porter land as required by the lease, none of the spoils were ever deposited on Porter's land or adjacent to the dike on the south boundary thereof. It was not until after Hurricane Camille in 1969 that the island became connected to the fastland. Prior to that time the island could be reached from Porter's land by wading at low tide. No evidence existed that any accretions were forming next to the dike on the southern boundary of Porter's land. The chancellor found from the evidence *751 that the island formed by the spoils reached a height of thirteen feet above the mean high tide and tapered down to 2.21 feet to the mean low water line near the base of the dike on the southern boundary of Porter's land. The chancellor found that the island formed by the spoils became the property of the State of Mississippi and that it was by accretion to the island that finally reached the fastlands of Porter. The chancellor was correct in so holding.
In International Paper Co. v. Mississippi Highway Department, 271 So.2d 395 (Miss. 1972), we held that the bed of a bay is the property of the state and all bodies of land arising from or upon such state owned bay floor become the property of the state. We also held that any accretion thereto which was not contiguous to private property belonged to the state. The same rule applies where the land arises as a result of depositing spoils dredged from the bay, or in this case, from the bottom of the Mississippi Sound. Furthermore, it is a general rule that the owner of an island, in this case the state, is entitled to the accretions thereto. Am.Jur., Water § 417 states in part as follows:
Addition to or extension of island or bar.
It may be stated as a very general principle, when followed to its ultimate, logical conclusion, that the owner of an island is entitled to additions thereto, under the proper application of general principles of accretion and reliction, in the same manner as is the owner of riparian land on the mainland.
Under the theory that the state owns the bed of a navigable stream, it has been widely held or recognized that the owner of an island or bar, as the case may be, in a navigable stream, is, as a general principle, entitled to additions thereto by accretion or reliction, where the ordinary requisites of accretion and reliction are otherwise met, in the same manner as is a riparian owner on the shore. As a corollary of this general rule, it has been held or recognized that where the accretions to the island meet the mainland or its accretions, the owner of the island is entitled to all the accretions forming on his shore to the point where they physically meet another shore or accretions thereto.
One of the cases cited in support of the rule is Hogue v. Bourgois, 71 N.W.2d 47, 54 A.L.R.2d 633 (N.Dak. 1955), which we cited with approval in International Paper Co., supra. In this case, all the accretions were to the island formed from the spoils and the last visible water line was next to the dike on the south side of Porter's land. Consequently, Porter was not entitled to any of the lands claimed by accretion.
Porter takes issue with the holding of the chancellor that Jackson County and its port authority could reacquire the 204 acres of land claimed by Porter by eminent domain proceedings. It is contended that the chancery court had no jurisdiction to pass on this question. All the pleadings clearly submitted this issue for decision by the chancellor. It is argued that this was a question that could only be determined by an eminent domain court. Ordinarily, this might be true, but where as here, one of the issues raised relative to the confirmation was the question of whether the county and the port authority could reacquire the land since it was no longer being used for industrial purposes, the court had jurisdiction to decide the question. Porter joined the issue on this question and specifically plead Section 7605-06, Mississippi Code 1942 Annotated, [now § 59-9-19, Miss.Code 1972 Ann.], and submitted that issue for decision by the court. It has long been the rule in this state that when a court of equity obtains jurisdiction it will give full relief, whether legal or equitable as to all matters relating to the subject matter of the bill even though it be required to pass on matters which would not have been proper subjects of equitable jurisdiction if they alone were the subject of *752 original relief. The rule is stated in Griffith, Mississippi Chancery Practice § 36 (2d ed. 1950), p. 39, as follows:
It is our settled policy that if equity have jurisdiction of the cause of action it is to assume full jurisdiction and settle all disputed questions in one and the same suit so far as within the pleadings and when necessary the court will allow and even suggest amendments to the plea as will permit full adjudication.
Appellant strongly urges that the chancery court was in error in declaring void that part of Section 7605-06, Mississippi Code 1942 Annotated, which it alleges prohibited Jackson County and its port authority from retaking by eminent domain the lands that had been conveyed to an industry in accordance with such section. However, appellant overlooks the fact that the court also construed this section and held that it meant, at the most, that the county and the port authority are prohibited from retaking such lands that are actually being used for industrial purposes and that the lands now owned by Porter are not so being used. The pertinent part of Section 7605-06 [now § 59-9-19, Miss.Code 1972 Ann.], reads as follows:
Such county, acting through the port authority or development commission, shall have the right to reclaim submerged lands for such purposes and shall also have the right to acquire by eminent domain proceedings, purchase or otherwise, any land or estate therein or property and rights that may be necessary for the purposes of this chapter, provided that land acquired for industrial operations by eminent domain shall be leased or shall be sold only with such provisions in the deed or lease as shall insure that the use of such land shall be beneficial to the carrying out of the purposes of this chapter and the promotion of commerce through said port. The county, acting through the port authority or development commission, shall have no authority or power to acquire without consent of the owner thereof any property operated or used for port, harbor or industrial operations, or for such purposes as the county, acting through the port authority or development commission, is authorized to acquire and use such property for, where such property has been sold or leased by the county, acting through the port authority or development commission, to any person, firm, or corporation for industrial operations as provided in this chapter. (Emphasis added).
Although the legislature cannot convey its power of eminent domain as that power is inherent in its sovereignty, the chancellor was in error in holding that the provisions were void for that reason. The legislature in which the power of eminent domain is vested can delegate this authority by statute. However, as stated in 26 Am.Jur.2d, Eminent Domain, § 19:
It has long been held that cities and other municipal corporations, counties, and other governmental subdivisions of the state may be authorized to acquire land by eminent domain. A municipal corporation or a county, however, has no inherent power of eminent domain and can exercise it only when especially authorized by the legislature. Since the right is delegated it can be exercised only within the ordinary scope of the delegation. (Emphasis added).
We hold that the legislature in furtherance of the purpose of the act had the authority to limit the power of the county to take by eminent domain in certain situations. It has the right to say what property or to what extent eminent domain powers shall be exercised by the county.
However, we are of the opinion that the chancellor correctly construed the statute to mean that the county or the port authority was prohibited from reacquiring property actually used or operated for industrial purposes. This statute was not intended to prohibit the county or its port authority from reacquiring by eminent domain *753 proceedings land which was not being any longer used for the purpose for which it was conveyed. The evidence is without dispute that in 1971 Porter sold its industrial plant together with 200 acres of land used in connection with the plant. It retained 204 acres which is not being used for industrial purposes and which it does not intend to use for industrial purposes in the future. As we understand this section it means that the county or the port authority is prohibited from acquiring without the consent of the owner any property operated or used for port, harbor or industrial operations. When Porter sold its industrial plant and the 200 acres upon which it was situated, it completely divested itself of any industrial operation in the area. It is no longer using the 204 acres for industrial purposes, or any other purpose, contemplated by the statute. The county and its port authority are not prohibited from acquiring the land for public purposes under their specifically granted right of eminent domain.

CROSS APPEAL
We are confronted at the outset in consideration of the cross appeal with the contention of the State of Mississippi that the chancellor was in error in confirming appellant's title to the 204 acres when the record shows that the mandatory provision of the statute giving authority to the county and port authority to execute the deed were not complied with by the county and the port authority. Although the county and the port authority do not join in this contention, it is properly raised by the state and must be decided.
Prior to 1961 the county had no authority to convey by deed the lands it acquired under the authority of Chapter 199, Laws of 1956; it did have authority to lease the land for a period not to exceed 99 years. In 1961 by the provisions of Chapter 3, 2d Extraordinary Session of the Legislature, the legislature authorized the transfer of land by deed. The pertinent part of this chapter is as follows:
The board of supervisors of any such county, acting through its county port authority or county development commission, shall have the following additional powers and authority:
(a) to set aside or lease all or portions of said harbor facilities, wharves, docks, sheds, warehouses, elevators, compresses, floating dry docks, graving docks, marine railways, tugboats, or any necessary or useful improvements for special purposes for a term not exceeding twenty-five (25) years; and to sell, lease or otherwise dispose of land acquired for industrial or harbor operations to individuals, firms or corporations, public or private, for industrial use, on such terms and conditions and with such safeguards as will best promote and protect the public interest, and they are hereby authorized to transfer title or possession to any part or all of such lands by special warranty deed, lease, contract, or other customary business instrument; however, no such lease of land acquired for industrial operations shall be executed for a term in excess of ninety-nine (99) years from its date, and before the execution of the same any such conveyance, lease, contract, or other disposition shall be authorized by the affirmative vote of at least two-thirds (2/3) of the membership of such port authority or development commission by order or resolution entered on its minutes, which order or resolution shall set forth the substantial terms of such conveyance, lease, contract, or other disposition. (Emphasis added).
After passage of this act the Board of Supervisors of Jackson County did enter the following order:
ORDER AUTHORIZING EXECUTION OF DEED TO H.K. PORTER COMPANY, INC.
WHEREAS, the Board of Supervisors of Jackson County, Mississippi, have previously agreed to convey to H.K. *754 Porter Company, Inc. the land which was previously leased to said Corporation, as is now authorized by law; and
WHEREAS, H.K. Porter Company, Inc. has complied with all of the conditions of its original lease and has paid to the County the sum of $1,000 for the execution of the said Deed.
NOW, THEREFORE, be it ordered by the Board of Supervisors of Jackson County, Mississippi, that the County convey the property on which H.K. Porter Company, Inc., a Corporation organized under the Laws of the State of Delaware, for the sum of $1,000.00, and that A.P. Moran, President, and Wilbur G. Dees, Clerk, of the Board of Supervisors of Jackson County, Mississippi, be, and they are hereby authorized and directed to execute the Deed in the form attached hereinbelow, the execution of which deed has been recommended by, and joined in by the Jackson County Port Authority, to-wit... .
The resolution of the port authority authorizing its president and secretary to join in such a conveyance as required by statute was not made a part of such resolution and, in fact, the record affirmatively shows that no such resolution was ever adopted by the port authority authorizing its president and secretary to join in the deed as required by the mandatory provisions of the statute.
The statute authorized the execution of the deed by the county and port authority specifically provided that a conveyance must be authorized by an affirmative vote of at least two-thirds of the membership of the port authority and that such order authorizing such conveyance must be entered on its minutes. It is clear under the law of this state that the board of supervisors of the county have no authority other than that delegated to it by the legislature. In this case the county, although the owner of the land, was without authority to convey it except pursuant to the authority granted to it by the legislature. In Universal Motor Co. v. Newton County, 158 Miss. 873, 131 So. 827 (1931), this Court stated:
The members of the board of supervisors are trustees for the public and must act for the public, and are bound by the limitation fixed by law upon their powers, and the condition under which contracts may be made. These being fixed by law, all persons are charged with notice of them.
(158 Miss. at 879, 131 So. at 828).
The board of supervisors of Jackson County had no authority to authorize the execution of the deed to Porter until the deed was authorized by affirmative vote of two-thirds of the membership of the port authority by an order or resolution entered on its minutes. There being none, the county was without authority to execute the deed and the port authority was without authority to enter into the transaction itself. The chancellor was of the opinion that the execution of the deed was merely a ministerial act required by the previously executed lease, which he held was validly executed and by the terms of which Porter had completely complied. However, in Howe v. State, 53 Miss. 57 (1876), and quoted in American Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296 (1939), we stated:
It matters not whether its [board of supervisors] action ... be regarded as judicial, legislative, or ministerial. Excess of authority in either capacity is simply void... . They can do valid acts, only as empowered by law.
We hold that the title to the land in question was in Jackson County and by the plain and unambiguous terms of the statute it could not be conveyed by the county until it was authorized by a vote of at least two-thirds of the membership of the port authority by an order or resolution spread upon its minutes setting out the terms of such conveyance. It is undisputed *755 that no such order or resolution was entered upon the minutes of the board. Under these circumstances we are compelled to hold that the deed was void and Porter acquired no title by virtue of the deed. It follows that the chancellor was in error in confirming title in Porter to the 204 acres of land in question. Of course, Porter still holds a 99 year lease on the lands in question and its validity is not involved in this lawsuit.
For the reasons stated, this case must be and is affirmed on direct appeal and reversed and rendered on cross appeal. Consequently, that part of the decree confirming title to the land in question in Porter is reversed and the bill of complaint dismissed with prejudice. In all other respects, the decree of the chancery court is affirmed.
Affirmed on direct appeal. Reversed and rendered on cross appeal.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.