# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01261-SCT

*THE CITIES OF OXFORD, CARTHAGE,*
*LOUISVILLE, STARKVILLE AND TUPELO, AS WELL*
*AS THE CITIES OF CANTON, CLARKSDALE,*
*GREENWOOD, KOSCIUSKO AND YAZOO CITY,*
*ACTING BY AND THROUGH THEIR RESPECTIVE*
*PUBLIC UTILITY COMPANIES*

*v.*

*NORTHEAST MISSISSIPPI ELECTRIC POWER*
*ASSOCIATION, TOMBIGBEE ELECTRIC POWER*
*ASSOCIATION, EAST MISSISSIPPI ELECTRIC*
*POWER ASSOCIATION, FOUR COUNTY ELECTRIC*
*POWER ASSOCIATION, COAHOMA ELECTRIC*
*POWER ASSOCIATION, YAZOO VALLEY ELECTRIC*
*POWER ASSOCIATION, MISSISSIPPI POWER &*
*LIGHT COMPANY, SOUTH MISSISSIPPI ELECTRIC*
*POWER ASSOCIATION, MISSISSIPPI POWER*
*COMPANY AND MONROE COUNTY ELECTRIC*
*POWER ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/24/95 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | THOMAS HENRY FREELAND, III |
| | DAVID R. HUNT |
| ATTORNEYS FOR APPELLEES: | JAMES KEITHLY CHILD |
| | JAMES N. COMPTON |
| | WILL A. HICKMAN |
| | W. P. MITCHELL |
| | LARRY D. MOFFETT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 9/11/97 |
| MOTION FOR REHEARING FILED: | 9/24/97 |
| MANDATE ISSUED: | 11/13/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This is an appeal from summary judgment granted in favor of the defendants-appellees (hereinafter "defendant-utilities") in the Circuit Court of Lafayette County, Mississippi.

¶2. The plaintiffs-appellants (hereinafter "municipalities") filed a declaratory judgment action seeking to have Senate Bill No. 2840 (1987 amendments to Miss. Code Ann. Sections 77-3-13, 77-3-17 and 77-3-21) (hereinafter "1987 Amendments") declared unconstitutional.[1] The municipalities contend that the 1987 Amendments have revised the Public Utilities Act of 1956 so as to allow the power companies to abridge the eminent domain rights of all Mississippi municipalities in violation of Article 7, Section 190 of the Mississippi Constitution of 1890.[2] This action also sought re-consideration of a series of decisions of this Court which held that certificates of public convenience and necessity granted to power companies were exclusive.

¶3. The municipalities are twelve Mississippi municipal corporations, each of which owns and operates a municipal electric utility.[3] The defendant-utilities are made up of seven electric power associations (hereinafter "EPA's"). The EPA's are engaged in the distribution and retail sale of electricity to their respective members-owners except in the cost of South Mississippi Electric Power Association, who is engaged in the sale of wholesale electric power to member associations. The defendant-utilities are also made up of Mississippi Power & Light Company (now named Entergy Mississippi, Inc.) and Mississippi Power Company (hereinafter "Power Companies"). These two defendant-utilities are investor-owned electric utilities engaged in the generation, transmission, distribution, and sale of electricity to their customers.

¶4. The declaratory judgment action was filed by the municipalities on October 11, 1994, and subsequently amended on November 16, 1994. The defendant-utilities moved, under Miss. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. The municipalities then filed a motion for summary judgment. Thereafter, the defendant-utilities requested that their 12(b)(6) motion be treated as a motion for summary judgment. The parties then submitted a Stipulation of Facts as set out below:

> The Plaintiffs and the Defendants enter into this Stipulation of Facts for the purpose of providing the Court a basis upon which to rule on the respective Motions for Summary Judgment filed by the Plaintiffs and the Defendants. The parties agree that the facts stipulated hereto are the only facts material to the legal issues in this action for the purpose of a ruling by the Court on the respective Motions for Summary Judgment and thereby disposing of this case on the merits. The Plaintiffs and the Defendants hereby stipulate the following facts:
>
> 1. The Plaintiffs are municipalities organized and existing under the laws of the State of Mississippi. Each of the Plaintiffs, with the exception of the City of Carthage, owns and operates an electric public utility engaged in the distribution and retail sale of electricity.
>
> 2. The Defendant Electric Power Associations are electric public utilities. The Defendant South Mississippi Electric Power Association is engaged in the generation, transmission and sale of wholesale electric power to its member systems on a non-profit basis. The other Defendant

electric power associations are engaged in the distribution and retail sale or electricity to their respective member-owners on a non-profit basis.

3. The Defendants Mississippi Power and Light Company and Mississippi Power Company are investor-owned electric public utilities engaged in the generation, transmission, distribution and retail sale of electricity.

4. The Defendants applied for and received from the Mississippi Public Service Commission certificates of public convenience and necessity to provide electric service to those service areas that they were serving on March 29, 1956, the effective date of the Public Utilities Act of 1956, Miss. Code Ann. § 77-3-1 et seq. (1991 and Supp. 1994). Pursuant to said certificates, the Defendants provide electric service within one or more of Plaintiffs' corporate limits.

5. Plaintiffs desire and seek to provide electric service to all consumers within the Plaintiffs' corporate limits and within one mile thereof, including in areas served by the Defendants pursuant to certificates of public convenience and necessity issued by the Mississippi Public Service Commission.

6. The Plaintiffs will be required to comply with the provisions of the 1987 Amendments (1987 *Mississippi Laws*, Chapter 353) if and when the Plaintiffs attempt to exercise the power of eminent domain so as to thereby acquire the facilities of another electric public utility being operated within the corporate limits of Plaintiffs and/or within one mile thereof.

For purposes of the Court's consideration and ruling on the respective Motions for Summary Judgment, the Plaintiffs and the Defendants agree that this Stipulation of Facts shall replace and supersede any and all factual allegations in the Complaint and the First Amended Complaint.

The Defendants have filed Motions to Dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, which motions remain pending before the Court. The Defendants have not filed answers to the First Amended Complaint. The Defendants hereby fully reserve their right to file answers, affirmative defenses, and if appropriate, counterclaims in response to the First Amended Complaint. The Plaintiffs have responded to Defendants' 12(b)(6) motions and have filed a motion for summary judgment.

Agreed and stipulated this 22d day of May, 1995.

(signatures omitted).

¶5. In the Mississippi Code of 1892, Sections 2933 and 3014 statutorily granted municipalities the authority to provide utility services to all inhabitants of the municipalities. Then, in 1916 the Legislature adopted Chapter 149 of the Mississippi Laws of 1916, which granted authority to the cities to extend service up to three miles outside the city limits. This authority was later enlarged to permit service up to five miles outside corporate limits. Miss. Code Ann. § 21-27-39 (1972). In 1936, the Mississippi Legislature enacted the Municipal Electric Plant Law of 1936 (now codified at Miss. Code Ann. § 77-5-401 et seq.(1972)) which authorized municipalities to acquire, operate, and maintain electric plants within or without the corporate limits, without any restriction or limitation of other laws, and to provide electric power and energy to any user or consumer thereof. Furthermore,

this law authorized the exercise of the power of eminent domain to accomplish the purpose of the law. Miss. Code Ann. § 77-5-441 (1972).

¶6. In 1934, the Municipally Owned Utilities Act was enacted which gave municipalities the right to operate and improve their own public utility systems. Mississippi Laws of 1934, Chapter 317 (now codified at Miss. Code Ann. § 21-27-11 et seq. (1972)). If the municipalities themselves chose not to provide electrical service, they still determined who did provide that service. The municipality would extend a franchise agreement to a third party which would grant the third party the use of the streets, alleys and public ground. Miss. Code Ann. § 21-13-3 (1972). The citizens of the municipalities made this decision by requiring that an ordinance granting a franchise must be approved by a majority of the qualified electors of the municipality. *Id.*

¶7. In 1956 the Mississippi Legislature adopted the Public Utilities Act of 1956 (hereinafter "1956 Act") (now codified at Miss. Code Ann. § 77-3-1, et seq. (1972)). This act authorized the Public Service Commission (hereinafter "PSC") the power to grant a right to utilities to service a particular area. The 1956 Act grandfathered existing utility services that were being provided under the aforementioned franchise agreements. Under the 1956 Act, a utility which seeks to serve in the corporate limits of a city and does not have a franchise must ask the city for one and then obtain the required certificate of public convenience and necessity from the PSC. The 1956 Act excluded municipalities from being subject to the act. Mississippi Code Annotated Section 77-3-1 (1972) states:

> Except as otherwise provided in Section 77-3-6, any public utility as defined in paragraph (d) of Section 77-3-3, owned or operated by a municipality shall not be subject to the provisions of this article, except as to the extension of utilities greater than one (1) mile outside corporate boundaries after March 29, 1956.

¶8. Finally, Senate Bill No. 2840 passed the Senate on February 6, 1987, passed the House of Representatives on March 3, 1987, and then was vetoed by Governor Bill Allain on March 5. The veto was overridden by both Houses on March 17, 1987, thus that date amending Miss. Code Ann. §§ 77-3-13, --17, and --21 dealing with the regulation of public utilities. It is from these amendments the municipalities filed their declaratory judgment action.

### STATEMENT OF THE ISSUES

¶9. The following issues are presented to this Court for appeal:

**I. Whether the 1987 Amendments, which establish the circumstances under which municipality can condemn the facilities of a public utility located in the municipality's corporate limits, are in violation of Section 190 of the Mississippi Constitution of 1890.**

**II. Whether the municipalities have due process rights which are offended by the 1987 Amendments.**

**III. Whether this Court should overrule a series of decisions which have held that a certificate of public convenience and necessity issued by the Mississippi Public Service Commission gives the certificated utility the exclusive right to render service in the area**

**covered by the certificate.**

## ANALYSIS

### Standard of Review

¶10. As stated previously, this appeal was perfected by the municipalities after the defendant-utilities were granted summary judgment by the Honorable R. Kenneth Coleman in the Lafayette County Circuit Court. The standard of review of summary judgment is de novo. This Court will use the same standard for granting or denying summary judgment as the trial judge. ***Taylor Machine Works, Inc. v. Great American Surplus Lines Ins. Co.***, 635 So. 2d 1357, 1361 (Miss. 1994).

¶11. The municipalities claim "this court must view the stipulated facts in a light most favorable to the municipalities in deciding whether summary judgment should have been granted to the power companies." However, the defendant-utilities counter by citing ***Taylor Machine Works*** for the proposition that a non-moving party is entitled to such favorable inferences "[w]here there is doubt as to whether a fact issue exists . . . ." ***Taylor Machine Works***, 635 So. 2d at 1360. The defendant-utilities also bring this Court's attention to its earlier decision in ***Wilburn v. Hobson*** where, as stated supra, the Court held that "[w]here the parties file and gain court approval of a formal stipulation agreement . . . the factual issues addressed in the agreement are forever settled and excluded from controversy." 608 So. 2d 1187, 1189 (Miss. 1992).

¶12. We agree with the lower court that there is no genuine issue of material fact for the lower court or for this Court to consider. The only remaining question is whether the defendant-utilities were entitled to judgment as a matter of law. We hold that they were and affirm the lower court on all points.

> **I. Whether the 1987 Amendments, which establish the circumstances under which municipality can condemn the facilities of a public utility located in the municipality's corporate limits, are in violation of Section 190 of the Mississippi Constitution of 1890.**

> **A. Standard of Review for constitutionality of a legislative enactment.**

¶13. As this issue indicates, the municipalities are attacking the constitutionality of the 1987 Amendments. Prior to the 1987 Amendments, the Public Utilities Act of 1956 provided in part that "[a]ny municipality shall have the right to acquire by purchase, negotiation or condemnation the facilities of any utility that is now or may hereafter be located within the corporate limits of such municipality." 1956 Miss. Laws, ch. 372, § 5(e), codified at § 77-3-17 (1972). As stated supra, the 1987 Amendments provide that prior to any condemnation as provided for under Miss. Code Ann. Section 77-3-17, the PSC must first determine that the certificated utility is not providing reasonably adequate service in the area in question and that the utility's certificate of public convenience and necessity should be canceled as provided in Miss. Code Ann. Section 77-3-21. The municipalities allege that the 1987 Amendments abridge their power of eminent domain in violation of Section 190 of the Mississippi Constitution of 1890. The Court finds this argument unpersuasive for the reasons set forth below.

¶14. As conceded by both parties, under Mississippi law a party challenging the constitutionality of a

statute must prove unconstitutionality beyond a reasonable doubt. ***Secretary of State v. Wiesenberg***, 633 So. 2d 983, 989 (Miss. 1994); ***Miss. Power Co. v. Goudy***, 459 So. 2d 257, 263 (Miss. 1984). This Court has previously discussed the presumption of a statute's validity, holding:

> We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

***Loden v. Miss. Public Service Comm'n***, 279 So. 2d 636, 640 (Miss. 1973) (citations omitted).

### B. Are the 1987 Amendments constitutional?

¶15. The municipalities assert that the 1987 Amendments have the effect of depriving, curtailing or diminishing their right of eminent domain by placing in the hands of privately owned corporations the power to prevent its exercise in violation of Section 190 of the Mississippi Constitution (1890). The defendant-utilities counter by stating that the 1987 Amendments were an entirely appropriate exercise of the Legislature's constitutional and statutory prerogatives, and that the lower court properly held as such.

¶16. First, let us begin by looking at the power of eminent domain and where a municipality gains such power. This Court discussed the power of eminent domain in ***H. K. Porter Co., Inc. v. Board of Supervisors of Jackson County***, 324 So. 2d 746 (Miss. 1979). In the ***H. K. Porter*** case, the lower court previously declared certain portions of § 7605-06 of the 1942 Code (now codified at Miss. Code Ann. § 59-9-19 (1972)) void. Those sections imposed certain prohibitions on the exercise of eminent domain by a county and its port authority. We held that:

> Although the legislature cannot convey its power of eminent domain as that power is inherent in its sovereignty, the chancellor was in error in holding that the provisions were void for that reason. The legislature in which the power of eminent domain is vested can delegate this authority by statute. However, as stated in 26 Am. Jur. 2d, ***Eminent Domain***, § 19:

> It has long been held that cities and other municipal corporations, counties, and other governmental subdivisions of the state may be authorized to acquire land by eminent domain. <u>A municipal corporation or a county, however, has no inherent power of eminent domain and can exercise it only when especially authorized by the Legislature. Since the right is delegated it can be exercised only within the ordinary scope of the delegation.</u>

> We hold that the legislature in furtherance of the purpose of the act had the authority to limit the power of the county to take by eminent domain in certain situations. It has the right to say what property or to what extent eminent domain power shall be exercised by the county.

***H. K. Porter***, 324 So. 2d at 752 (emphasis added by this Court in ***H.K. Porter***).

¶17. Furthermore, 26 Am. Jur. 2d, ***Public-utility or service-company property; taking by a municipality or other public body***, § 124, states:

A municipality or other public body, when authorized by the legislature, may take the property or plant of a public utility or service company for uses similar to those to which it has been devoted.

. . . .

However, the power of a municipality or other public body to take for public-utility purposes the property of a public utility already in use for is peculiar purposes must rest upon legislative authority granted either expressly or by implication. In addition, a municipality or other public body may take any of the properties of a public-service company for application to utility purposes unlike those of the company only if authority so to do is granted by the legislature, either expressly or by necessary implication.

¶18. The Court had the opportunity to consider the 1987 Amendments in *City of Clarksdale v. Miss. Power and Light Co*. The City of Clarksdale (the City) filed a petition to condemn facilities of Mississippi Power & Light (MP & L) pursuant to Miss. Code Ann. § 77-3-17 (Supp. 1986) on March 5, 1987. 556 So. 2d 1056, 1057 (Miss. 1990). Subsequent to that date, Governor Allain's veto of Senate Bill No. 2840 was overridden by both houses on March 17, 1987, thus on that date amending Miss. Code Ann. §§ 77-3-13, --17, --21 (1987 Amendments). In *City of Clarksdale*, the PSC had not acted on the utility's certificate of public convenience and necessity, as the amended sections so required. Therefore, the special court of eminent domain dismissed the City's petition. *City of Clarksdale*, 556 So. 2d at 1057.

¶19. The main issue in that case was whether or not the 1987 Amendments even applied to the City since it began its condemnation proceedings some twelve or so days prior to the passage of the 1987 Amendments. We held that the 1987 Amendments did apply because "[i]t is also the general rule that where a statute affects only the mode of procedure, and not the substantive rights of parties, it applies to pending actions." *Id.* This Court further stated that "we glean a positive Legislative intent for Miss. Code Ann. § 77-3-17 to apply to condemnation proceedings of this nature, whether pending or not. Especially is this true since the City's power to institute eminent domain proceedings is solely statutory." *Id.* at 1058 (emphasis added). *City of Clarksdale* gave this Court sufficient opportunity to study and review the 1987 Amendments, yet we affirmed the dismissal of the condemnation proceedings for failure of the City to have MP & L's certificate of public convenience and necessity canceled by the PSC before instituting their power of eminent domain.

¶20. The municipalities argue that the 1987 Amendments abridge their power of eminent domain in favor of privately-held corporations. They cite a number of old cases decided by the United States Supreme Court to support their position. *Pennsylvania Hospital v. City of Philadelphia*, 245 U.S. 20 (1917); *Stone v. State of Miss.*, 101 U.S. (11 Otto) 1079 (1879); *West River Bridge Co. v. Joseph Dix and the Town of Brattleboro and Dummerston*, 47 U.S. (6 How.) 507 (1848); *Charles River Bridge Co. v. Warren Bridge Co.*, 36 U.S. (11 Pet.) 420 (1837). In fact, none of the cases cited by the municipalities are applicable in the case sub judice. We find the argument made by defendant-utilities as persuasive on this point. They contend that the cases cited by the municipalities on this point stand for the proposition that private property is always subject to the sovereign's eminent domain power should the legislature decide to exercise it, which is not the issue before this Court here.

¶21. The municipalities concede that the Legislature has the power to deny municipalities the ability to exercise the power of eminent domain. Indeed, the municipalities state that:

> The fact that the legislature may take away entirely the eminent domain power it has conferred on municipalities, or refuse to confer the power is beside the point. While the legislature may have the power to deny entirely or modify as it chooses the right of a municipality to exercise the power of eminent domain, it is clear that any attempt by the legislature to place in the hands of private corporations such as the power companies the ability to prevent exercise of the power of eminent domain is a nullity.

¶22. Therefore, it seems that the municipalities' main contention as to the constitutionality of the 1987 Amendments is that by allowing utilities to correct any deficiencies or inadequacies, pursuant to Miss. Code Ann. Section § 77-3-21 (1972), before the PSC will cancel the utilities' certificate of public convenience and necessity is effectively placing the ability to abridge the power of eminent domain in the hands of private corporations which would be violative of Section 190 of the Mississippi Constitution of 1890.

¶23. We find this argument unpersuasive. The municipalities have no inherent power or right of eminent domain. The municipalities have asserted that the defendant-utilities have some sort of "veto" power over the municipalities' eminent domain power. The 1987 Amendments provide a procedure which the municipalities must follow before condemning the land service areas and facilities of the defendant-utilities. Surely the Legislature which may grant or deny the power of eminent domain to a municipality may also establish a procedure or method by which it may be void.

### II. Whether the municipalities have due process rights which are offended by the 1987 Amendments.

¶24. The appellees state that since the "due process required by the Federal Constitution is the same 'due process of law' which is required by Section 14 of the Constitution of the State of Mississippi," these two claims can be dealt with together. *Miss. Power Co. v. Goudy*, 459 So. 2d 257, 261 (Miss. 1984).

¶25. The municipalities allege that the due process that is being denied them is the ability to carry out the power of eminent domain to acquire privately owned electric utilities. The municipalities argue further that the 1987 Amendments accomplish this by placing the option of preventing the exercise of the municipalities' power of eminent domain in the hands of the defendant-utilities. The crux of the municipalities' argument is that the Fourteenth Amendment to the Constitution of the United States and Article 3, Section 14 of the Mississippi Constitution prohibit the denial of the right of due process.

¶26. This argument as applied to this case is without merit. As the defendant-utilities state in their brief and as stated supra, the municipalities have no "right" of eminent domain. Their power of eminent domain if any is derived by grant of statute. *H. K. Porter*, 324 So. 2d at 752. It is admitted by the municipalities that they have no due process rights against the Legislature. The case of *South Macomb Disposal Authority v. Township of Washington* holds:

> The nature of the relationship between a public corporation and its creating state has led the

Court to conclude that a municipal corporation "cannot invoke the protection of the Fourteenth Amendment" against its own state, *City of Newark v. New Jersey*, 262 U.S. 192, 196, 43 S.Ct. 539, 540, 67 L. Ed. 943 (1923), and is prevented from attacking the constitutionality of state legislation on the grounds that its own rights have been impaired.

790 F. 2d 500, 504 (6th Cir. 1986) (citations omitted).

¶27. The municipalities make the argument that they brought suit against the defendant-utilities and are thus attacking acts of the defendant-utilities and not the State, therefore they should be able to enforce due process rights against the utilities. Here again, the Court fails to see the merit in this argument. The municipalities' attack is an attack on the Legislature and not the actions of the defendant-utilities. The violations that the municipalities allege are directly a result of the 1987 Amendments and that is why the municipalities question the constitutionality of said amendments. We find that the municipalities are attacking the Legislature via the 1987 Amendments and, thus, are precluded from invoking the protection of the Fourteenth Amendment as set forth above.

¶28. Furthermore, the municipalities cannot invoke the due process clause against the defendant-utilities because they are private entities. The defendant-utilities bring to this Court's attention a number of cases which underscore this point. *Shelley v. Kramer*, 334 U.S. 1, 13 (1948) (Fourteenth Amendment acts as a shield against only the government and does not affect the relations between private parties); *Rendell Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities."). *Cf. Campbell v. United States*, 962 F.2d 1579, 1583 (11th Cir. 1992) ("Even when state laws permit private conduct which allegedly deprives claimants of constitutional rights, these laws do not transform private conduct into state action.").

¶29. We hold that even if the Plaintiff Municipalities had a "right" of eminent domain, it is prescribed totally by Legislative act and as the Fifth Circuit has said that when the Legislature extinguishes a "right" via legislation that effects a general class of people, "the legislative process provides all of the process that is due." *McMurtray v. Holladay*, 11 F.2d 499, 504 (5th Cir. 1993). Since the municipalities claim a denial of due process by the 1987 Amendments' restriction on the municipalities' eminent domain powers, we hold the obvious that the legislative process leading up to the enactment of the 1987 Amendments provided all the process that was due. The municipalities lost in the l987 legislative enactments and the remedy for change is in the Legislature.

> **III. Whether this Court should overrule a series of decisions which have held that a certificate of public convenience and necessity issued by the Mississippi Public Service Commission gives the certificated utility the exclusive right to render service in the area covered by the certificate.**

¶30. This Court has interpreted the Public Utilities Act of 1956 to grant to the holders of certificates of public convenience and necessity an exclusive right to provide service to the individuals in that certificated area. *City of Kosciusko v. Miss. Power and Light Co.*, 370 So. 2d 1339 (Miss. 1979); *Capital Electric Power Assoc. v. City of Canton*, 274 So. 2d 665 (Miss. 1973); *Capital Electric Power Assoc. v. Miss. Power and Light Co.*, 218 So. 2d 707 (Miss. 1969); *Capital Electric Power Assoc. v. Miss. Power and Light Co.*, 150 So. 2d 534 (Miss.), *cert denied*, 375 U.S. 77 (1963);

***Delta Electric Power Assoc. v. Miss. Power and Light Co.***, 149 So. 2d 504 (Miss.), *cert denied* 375 U.S. 77 (1963); ***Miss. Power Co. v. East Miss. Electric Power Assoc.***, 140 So. 2d 286 (Miss. 1962); ***Capital Electric Power Assoc. v. Miss. Power and Light Co.***, 125 So. 2d 739). The municipalities claim that characterizing the rights under a certificate of public convenience as exclusive is clearly contrary to the legislative enactments, and that the cases which do so should be reconsidered.

¶31. We quote the following language from this Court's decision in the ***City of Canton***:

> We have repeatedly held that the certificate of public convenience and necessity issued by the Public Service Commission to operate an electric utility is an exclusive right to operate in a designed area, so long as the utility is capable of rendering electric service to the public located in the area.

***City of Canton***, 274 So. 2d at 668.

¶32. Also, this Court has previously held that municipal utilities may not provide electric service within the certificated areas of other public utilities. ***City of Canton, supra***, 274 So. 2d at 669; ***Miss. Power and Light Co. v. Capital Electric Power Assoc.***, 222 So. 2d 399, 404-05 (Miss. 1969); ***Capital Electric Power Assoc., supra***, 218 So. 2d at 715; ***Capital Electric Power Assoc., supra***, 150 So. 2d at 541; ***Delta Electric Power Assoc., supra,*** 149 So. 2d at 513; ***Miss. Power and Light Co., supra,*** 140 So. 2d at 287-88. This Court most recently addressed this issue in ***City of Kosciusko v. Miss. Power and Light Co.***, 370 So. 2d 1339 (Miss. 1979) In that case, the city's light and water commission attempted to extend its electric service into areas that had recently been annexed by the city, but were within another public utility's certificated area. The lower court in that case enjoined the city's actions and this Court held:

> We cannot agree that Section 77-3-1 permits an exempt municipal utility to intrude into a regulated utility's certificated area. Two reasons are persuasive. First, the idea that a municipally owned utility may extend its services whenever and wherever it desires, overlapping with other power sources, would make a shambles of the orderly and regulated scheme of utility service ordained by our legislature in the Public Utilities Act. ***Capital Electric Power Assoc. v. Mississippi Power and Light Co.***, 240 Miss. 139, 125 So. 2d 739 (1961). The second is that on the day of certification MP&L was granted a property right to service the disputed area outside Kosciusko .

*Id.* 370 So. 2d at 1340-41.

¶33. Also, in ***City of Canton***, this Court enjoined the city's attempted intrusion of Capital Electric Power Association's certificated area and held that the certificate of public convenience and necessity gave Capital EPA the exclusive right to serve customers in its certificated area. This Court stated:

> The issue in this case is simply whether or not the certificate of public convenience and necessity issued to the complainant, Capital Electric Power Association, gave it the exclusive right and obligation to furnish electricity within the area specified in the certificate. The chancellor held that the certificate granted to appellant was not exclusive and that both the appellant and defendants had a right to furnish electrical energy to Canton Academy, Inc. We hold, however, that the certificate of public convenience and necessity issued to the

complainant, Capital Electric Power Association, under the so-called 'Grandfather Clause' (Section 7716-05(b), Mississippi Code 1942 Annotated (1956)), gave it the exclusive right to furnish electric energy to patrons within the area designated in the certificate.

274 So. 2d 665, 667 (Miss. 1973).

¶34. The Court went on to say that:

We have repeatedly held that the certificate of public convenience and necessity issued by the Public Service Commission to operate an electric utility is an exclusive right to operate in a designated area, so long as the utility is capable of rendering electric service to the public located in that area.

*Id.* at 668 (citations omitted).

¶35. The provisions of the 1956 Act cited above and the 1987 Amendments are specific provisions concerning the regulation of utilities by the PSC and that under Mississippi Law, specific statutory provisions govern over general provisions, such as those in the municipal utility acts. The Municipally Owned Utilities Act and the Municipal Electric Power Plant Law of 1936 (§§ 21-27-11, et seq. and 77-5-401, et seq.) are general applications dealing with municipalities and electric power. However, the 1987 Amendments are specific provisions (under the article entitled *Certificates of Public Convenience and Necessity; Rates; Service*) of regulation by the PSC. The 1987 Amendments set forth specific procedures for a municipality to follow in order to use its power of eminent domain to condemn a public utility's service area and facilities. "It is well settled that when construing two statutes that encompass the same subject matter, a specific statute will control over a general one." *Wilburn v. Hobson*, 608 So. 2d at 1191. The defendant-utilities also cite for support this Court's decision in *Miss. Public Service Comm'n v. City of Jackson*, 328 So. 2d 656 (Miss. 1976). In that case we held that municipal utility statutes are subordinate to contrary provisions of the 1956 Act if it is clear that the legislature so intended. The defendant-utilities further state that this Court held that the PSC, pursuant to § 77-3-1, could regulate the City of Jackson's rates for water charged to customers more than one mile outside the municipal boundaries. The City of Jackson then argued that under a provision of the Municipally Owned Utility Act, it had the right to set rates for water customers up to five miles outside the municipal boundaries, as long as the rate charged was not greater than twice the rate charged to customers within the city. The Court held that the 1956 Act controlled. *Id.* at 658-59. Furthermore, the defendant-utilities cite *Delta Electric Power Assoc. v. Miss. Power and Light Co.*, 149 So. 2d 504 (Miss. 1963), for the same proposition that "to the extent that the latter statute is inconsistent with any of the former's provisions, the [1956] Act modifies them." Id. at 513.

¶36. The Legislature has re-enacted the pertinent provisions of the Public Utilities Act without change, thereby adopting and confirming the decisions of this Court. *See, e.g.,* 1956 Mississippi Laws Ch. 372, § 5 as compared with 1983 Mississippi Laws Ch. 467, § 10 as compared with 1987 Mississippi Laws Ch. 353, § 2. This Court stated in *Russell v. Federal Land Bank*, 176 So. 737, 742 (Miss. 1937), that "re-enactment of a statute which has been judicially construed is an adoption of the construction placed upon it by the court."

¶37. We hold that the lower court's grant of summary judgment on behalf of the defendant-utilities

should be affirmed. The proper forum for the issue raised by the municipalities is the Legislature, not this Court. The restriction placed on the municipalities in their exercise of the power of eminent domain pursuant to the 1987 Amendments does not abridge a municipality's power of eminent domain, because they have no such power unless granted by the Legislature. The 1987 Amendments define the power granted by the legislative act. Also, the municipalities had no due process rights which were violated as a result of the 1987 Amendments and finally, the grant of a certificate of public convenience and necessity is exclusive so long as the provider is providing adequate service to the customers in the area covered by the certificate.

¶38. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., NOT PARTICIPATING.**

1. The 1987 amendments are set forth in the Laws of 1987, Chapter 353 and are included as an attachment to this memorandum. The 1987 amendments affect the following sections of the Mississippi Code:

§ 77-3-13(6) "Prior to the acquisition pursuant to Section 77-3-17, Mississippi Code of 1972, or other provisions of law, by any public agency, authority, district, state or other agency, institution, or political subdivision thereof, of any certificate of public convenience and necessity or portion thereof, service areas or portion thereof, or operating rights or portion thereof, issued or granted by the commission pursuant to the provisions of this Section 77-3-13 and/or the facilities or other properties and equipment of the utility providing service therein; of any regulated utility as defined in Section 77-3-3(d)(i), (ii) and (iii), Mississippi Code of 1972, the commission shall first determine such service area, certificate of public convenience and necessity, or operating right, or portion thereof, should be canceled as provided in Section 77-3-21, Mississippi Code of 1972."

§ 77-3-17. "Any municipality shall have the right to acquire by purchase, negotiation, or condemnation the facilities of any utility that is now or may hereafter be located within the corporate limits of such municipality; provided, however, prior to any municipality exercising the right of eminent domain as provided herein, the commission shall determine that the certificate of public convenience and necessity granted to the utility pursuant to Section 77-3-13 for the service area wherein such facilities are located, shall be canceled as provided in Section 77-3-21." (Amendment underlined.)

§ 77-3-21. "The commission may, after a hearing had upon due notice, make such findings as may be supported by proof as to whether any utility holding certificate under the provisions of this article is rendering reasonably adequate service in any area covered by such utility's certificate. In the event the commission finds that such utility is not rendering reasonably adequate service the commission may enter an order specifying in what particulars such utility has failed to render reasonably adequate service and order that such failure be corrected within a reasonable time, such time to be fixed in such order. If the utility so ordered to correct such failure fails to comply with such order of the commission and the commission finds that cancellation of it certificated would be in the best interest

of the consuming public served by the holder of the certificate, its certificate for the area affected may be revoked and canceled by the commission. <u>Prior to any municipality exercising the power of eminent domain as provided in Section 77-3-17, the commission shall determine that the certificate of public convenience and necessity granted to the utility pursuant to Section 77-3-13 for the service area wherein such facilities are located, shall be canceled as provided in this section. Nothing in this section shall be construed to include service for water and sewage</u>." (Amendment underlined.)

2. Section 190 provides as follows:

The exercise of the right of eminent domain shall never be abridged, or so construed as to prevent the legislature from taking property and franchises of incorporated companies, and subjecting them to public use; and the exercise of the police powers of the state shall never be abridged, or so construed as to permit corporations to conduct their business in such a manner as to infringe upon the rights of individuals or general well being of the state.

    Miss. Const. § 190 (1890).


3. Carthage, Mississippi is the one exception.