Mississippi Power & Light Co., et al. *v.* Mississippi Power District

No. 40419 March 11, 1957 93 So. 2d 446

*McClure & McClure,* Sardis; *Fred B. Smith,* Ripley; *Green, Green & Cheney, Byrd, Wise & Smith,* Jackson; *Dick Ramsay Thomas,* Senatobia, for appellants.

602

*Johnson & Troutt,* Senatobia; *Smallwood, Sumners & Hickman,* Oxford; *William Harold Cox,* Jackson, for appellee.

ETHRIDGE, J.

This is a controversy over the organization of an electric power district in De Soto County. By resolution of June 8, 1955, the Board of Supervisors of De Soto County created and incorporated appellee Mississippi Power District. There was a hearing before the board of supervisors prior to the resolution creating the district, at which appellants, Mississippi Power & Light Company, A. S. Henley, and nine other citizens of De Soto County appeared, protesting organization of the district. From the order creating the district, appellants, with a bill of exceptions, appealed to the circuit court. Code of 1942, Section 1195. That tribunal on April 25, 1956, approved and affirmed the board's order of June 8. The circuit court was of the opinion that the organization of the district was in substantial compliance with the statutes. From that judgment this appeal was taken.

1.

Appellee was organized under the Power District Act of 1936. Miss. Laws 1936, Chap. 187, Miss. Code of 1942, Sections 5439-5462. In brief, this act establishes procedures for the creation and incorporation of an electric power district, its method of government, its dissolution, its corporate powers, and financing. Under Code Section 5441 (3) (9), at least ten per cent of the qualified voters in any election unit may present a petition to the board of supervisors declaring "that in the opinion of the peti-

tioners, public convenience and necessity demand the creation and maintenance of a power district." Its boundaries "shall be coterminous with the boundaries of one or more election units," which is defined as an election district. The petition must contain other specific information and averments. Upon receipt of the petition the "board of supervisors shall without delay call an election" in the election unit or units proposed to be included in the district. Section 5441 (4). The question propounded in the ballots is whether the named power district shall be created and established. Section 5441 (4) provides: ". . . each such board of supervisors . . . shall give notice of such election. Such notice shall state the name of the proposed district and describe its boundaries, and shall state the time when such election shall be held and the location of the polling places. The same shall be published at least once a week for at least three consecutive weeks before the date of said election in some newspaper or newspapers having a general circulation within the proposed district."

Qualified electors of the election district in which the proposed power district is to be created vote on the issue. The election is held and conducted in accordance with the general election laws. Code Section 3204, et seq. After the election, the county board of election commissioners must canvass the returns, declare the results of the election, and within ten days file the report with the clerk of the board of supervisors. The board of supervisors must promptly canvass the report, and if a majority of those voting were in favor of creation of the power district, the board "shall order and declare the district created." The board of supervisors then files in the office of the Secretary of State a certified copy of its order creating the power district. After this is done "the creation of such district shall be deemed complete."

The power district consists of five subdistricts with a member of the board of directors from each subdistrict appointed by the president of the board of supervisors. Methods are provided for dissolution of the district. Its powers are enumerated. In general, they are to acquire, construct, operate, and maintain any utility within or without the district, and to sell to the public and to governmental subdivisions heat, light and power service, and any other related service. The board of directors elects a general manager, who shall publish in a newpaper an annual financial report. The district can issue bonds secured by its own property or revenues, and has the power of eminent domain.

The act contemplates the use of public funds by a power district in two respects. Code Section 5441 (8) provides: "All costs properly incurred by the boards of supervisors and the boards of election commissioners of the respective counties in publishing notice of the election, in employing persons to conduct the same, or in performing other duties imposed by the provisions of this Act, shall be paid as other similar expenses of such boards are paid and shall be and become a charge in favor of such boards against the district, to be repaid upon the presentation of proper vouchers therefor to such district, when and as such district has funds available for that purpose."

Section 5456 states: "Any municipality situated within the territorial limits of a district and any county a part of which is so situated, may advance funds to such district to pay the preliminary organization and administration expenses thereof, on such terms of repayment as the governing body of such municipality or county shall determine. Notwithstanding the provisions of any law to the contrary, any such municipality or county is authorized and empowered to borrow money for a period not to exceed one year from the date of such borrowing, for the purpose of making such advances."

Code Section 5441 (9) provides, ''No informality in any proceedings or in the conduct of said election, not substantially affecting adversely the legal rights of any citizen, shall be held to invalidate the creation of any district.'' Section 5460 states that the act is for the purpose of permitting the increased use of electricity in the State; that the powers granted by this act ''shall be liberally construed to effectuate the purposes hereof''; and that, ''This Act is complete in itself and shall be controlling.''

2.

On May 2, 1955, a petition signed by forty-six citizens of the Pleasant Hill Election District or precinct was filed with the Board of Supervisors of De Soto County. The petition asked for the creation of the Mississippi Power District under the 1936 Act, and that the boundaries of the proposed district should be made coterminous with the boundaries of the Pleasant Hill Election District, describing the same. The petition requested that an election be called for the purpose of determining whether such power district should be created.

On May 2, 1955, the board of supervisors entered an order calling an election for the purpose of submitting to a vote the question of the creation of the Mississippi Power District in the Pleasant Hill Election District. The order fixed May 28, 1955, as the date for the election, and directed publication of notice of the election as required by statute. The form of notice was recited in the order of May 2.

On May 6, 1955, appellant, Mississippi Power & Light Company, filed a protest against calling the election, and a petition to vacate and set aside the board's order of May 2 calling the election. Also on May 6 the other appellants, taxpayers, filed a similar protest and petition to vacate the order of May 2. On May 11, 1955, the

board of supervisors overruled and disallowed these two petitions.

On May 28, 1955, the election was held. The report of the county election commissioners reflected that there were 123 qualified voters in the Pleasant Hill District; that 64 voted in favor of creation of the power district, and 7 against; and that therefore the election was carried for creation of the power district.

On June 6, 1955, appellants filed protests against creation of the Mississippi Power District. The board of supervisors held a hearing on these petitions and protests of appellants. At its conclusion, the board, on June 8, 1955, entered an order overruling appellants' protests and petitions, and declaring the creation of the Missisippi Power District. From this order of the board of supervisors of June 8, appeals were taken to the circuit court and then to this Court.

3.

■■■ ■ Appellee argues that the appellants have no right, and have shown no interest, as affected parties which would warrant them in contesting the board's order. Code Section 5441 (9), quoted above, provides that informalities "not substantially affecting adversely the legal rights of any citizen" do not invalidate the creation of a district, and that any proceedings contesting the validity must be commenced within thirty days from the date of filing the order creating the district with the Secretary of State. Mississippi Power and Light Company is a Florida corporation, qualified to do business in this State, and with a considerable investment in electric distribution lines in De Soto County, including the Pleasant Hill District. Appellee says that the company is not a citizen authorized to appeal such an order, and has shown no resulting damages. We cannot agree. The statute clearly contemplates the availability of judicial review by a person adversely affected

by an order creating a power district. A nonexclusive franchise is a valuable right which can be protected in the courts. Payne v. Jackson City Lines, Inc., 220 Miss. 180, 70 So. 2d 520 (1954); Oliphant v. The Carthage Bank, 80 So. 2d 63 (1955); see also South Mississippi Airways v. Chicago & Southern Airlines, 200 Miss. 329, 26 So. 2d 455, 165 A. L. R. 906 (1946). ██ Moreover, the appeal from the board to the circuit court is based upon the provisions of Code of 1942, Section 1195, which is the general appeal statute from boards of supervisors by "any person aggrieved" by an order of a board. The Power District Act does not expressly provide a method of appeal from orders creating a power district. Hence Section 1195 is pertinent. Appellant company comes within the category of a person aggrieved or adversely affected by the board's order. The other appellants, citizens and taxpayers of De Soto County, qualify also under Section 1195.

4.

██ After careful consideration, we have concluded that, because of a serious and fatal jurisdictional defect in the order of June 8, 1955, the creation of appellee-district must be declared invalid and void. Hence we do not reach the numerous other questions raised in appellants' briefs. A board of supervisors is a tribunal of limited jurisdiction, and its jurisdiction must affirmatively appear on the minutes of the board. ██ Yet the order of June 8 creating the district fails to affirmatively adjudicate that any notice of the election was published, and if so, how, where and when it was published. Nor does the record reflect any other order of the board on its minutes so adjudicating. Code Section 5441 (4), quoted above, requires the board of supervisors to give notice of the election, specifies what the notice shall contain, and provides for the method of its publication.

The order of June 8, 1955, creating the district adjudicates the board met with a quorum present; that the election commissioners filed on June 6 a report of the results of the election; and that "pursuant to resolution adopted by this board" on May 2, an election was held on May 28. The minutes of the board then set forth in full the report of the election commissioners. It recites that "acting pursuant to resolution" of the board of May 2, the election commissioners held the election and it was carried by a stated number of votes for creation of the power district; that "said election was in all respects held in accordance with the provisions" of the election laws and the Power District Act. Following report of the election commissioners, the board of supervisors' minutes creates the Mississippi Power District and describes the territory included therein, divides the district into five subdistricts, and directs the filing of a certified copy of this order with the Secretary of State.

The record reflects that on May 30, 1955, there was filed in the records and files of the board of supervisors a proof of publication of notice of the election in a newspaper on May 5, 12, 19 and 26, 1955. This proof of publication is not in the minutes of the board of supervisors, and the board has made no affirmative adjudication that such notice was given.

■■ ■ It is well established that a board of supervisors is a tribunal with limited jurisdiction; that it must adjudicate in its minutes every essential jurisdictional fact; and, unless this is done, it has no jurisdiction to proceed, and any action in such matter is void. If notice of the election was not published, the board could not create the district. ■■ ■ Publication of notice is a fundamental requirement of the statute. And such jurisdictional fact must be specifically adjudicated in the minutes of the board. The cases so holding are

numerous. For example, in Board of Supervisors of Lowndes County v. Ottley, 146 Miss. 118, 112 So. 466 (1926), there was an election to authorize the issuance of school bonds. The report of the election commissioners and the order of the board, which set forth the results of the election and directed the issuance of bonds, made no reference to notice of the election as required by law. The following month some taxpayers protested issuance of the bonds, and on the same day a proof of publication was filed with the board of supervisors. Holding the bond issue invalid, the Court said: "While the board of supervisors ordered that notice be given by the commissioner of election, it does not appear, from any of the orders of the board in this record, that the board ever adjudicated that the qualified electors had been duly and legally notified of the holding of the election. The qualified electors were entitled to this notice under the statutes in force at the time of the election. This notice was necessary in order to give the board of supervisors jurisdiction over the qualified electors of the Caledonia district. . . . . Neither the report of the election commissioners, nor the order of the board of supervisors directing the issuance of the bonds, made the slightest reference to any notice to the qualified electors of the date and purpose of the election."

In Henderson Molpus Company v. Gammill, 149 Miss. 576, 115 So. 716 (1927), appellant successfully attacked a tax sale. The minutes of the board of supervisors failed to adjudicate or affirmatively show the publication of any notice to taxpayers concerning the filing of the assessment rolls and their being open to public inspection and objections. It was stipulated that in fact the tax assessor gave proper notice by publication in a newspaper. This was held to be insufficient. It was necessary that all jurisdictional facts appear affirmatively.

In Berryhill v. Johnston, 206 Miss. 41, 39 So. 2d 530 (1949), appellee successfully attacked a tax sale, on the ground that the board of supervisors at its August meeting failed to affirmatively adjudicate that notice by publication had been given to taxpayers that the board had completed equalization of tax assessments and would at its August meeting hear objections to such assessments. The Court said: ''By an unbroken line of decisions, this Court has uniformly held that the giving of such notice is jurisdictional and is necessary in order to confer on the board of supervisors the jurisdiction to equalize and approve the assessment rolls, and the fact that such notice was given must affirmatively appear upon the minutes of the Board of Supervisors.'' The August minutes stated that notice had been given ''as required by law'', but it was held that this was not an affirmative adjudication of notice. In other words, the jurisdictional fact that notice was actually given cannot be supplied, as suggested here, by inference or other information outside of the minutes of the board, but it must affirmatively appear on the minutes that notice was actually given. The long line of decisions so holding have dealt with bond issues, creation of school districts, establishment of public roads, the approving of tax assessment rolls, and similar cases. Monroe County v. Minga, 127 Miss. 702, 90 So. 443 (1922); Broom v. Board of Supervisors of Jefferson Davis County, 171 Miss. 586, 158 So. 344 (1934); Simpson County v. Burkett, 178 Miss. 44, 172 So. 329 (1937); Boutwell v. Board of Supervisors of Jasper County, 128 Miss. 337, 91 So. 12 (1922).

Appellee says that the Power District Act simply provides for the organization and incorporation of a power district, and does not deal with the use of public funds; and that therefore these cases should not apply. Nevertheless, under Section 5441 (8), the cost of the election

is paid by the county, although it becomes a charge in favor of the board against the power district when and if the district has funds available to pay the debt. Under Section 5456, the county board of supervisors is also given the power in its discretion to use public funds for a loan to the power district ''to pay the preliminary organization and administrative expenses thereof, on such terms of repayment as the governing body of such . . . county shall determine.'' And the county is authorized to borrow money in order to make such advances. Since public funds are used for the election and may be used for preliminary organization and administrative expenses of a power district, it cannot be said reasonably that the long line of cases requiring a board of supervisors to affirmatively adjudicate on its minutes notice of an election are not applicable to proceedings creating a power district. Public funds are involved, and the board is acting as a tribunal of limited jurisdiction.

 █ Nor do the statutory provisions in Sections 5441 (9) and 5460, directing a liberal interpretation of the Power District Act, warrant the omission of these due process, procedural and jurisdictional requirements for boards of supervisors in the organization of a power district. The Act expressly requires publication of notice of the election. It does not change the jurisdictional requirements for actions of the board.

For these reasons, the order of the board of supervisors of June 8, 1955, creating appellee Mississippi Power District is invalid. The judgment of the circuit court is reversed and judgment is rendered here for appellants. Since this decides the case, and since it cannot be remanded for further proceedings (judgment being rendered here), it is not necessary or proper to pass upon the other issues raised in appellants' briefs.

Reversed and judgment rendered for appellants.

*Robeds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.