CAPITAL ELECTRIC POWER ASSN. *v.* MISSISSIPPI POWER & LIGHT CO.

No. 41606 January 9, 1961 125 So. 2d 739

140

*Cox & Dunn, Hedgepeth, Ewing, Price & Hedgepeth,* Jackson, for appellant.

*Byrd, Wise & Smith,* Jackson, for appellee.

ARRINGTON, J.

This litigation involves a dispute between Capital Electric Power Association and the Mississippi Power & Light Company, two corporate electric utilities, as to which is entitled to serve the Elton Company, a corporation of this State which operates a wood-chipping plant at Elton Station on the Illinois Central Railroad about three miles south of the City of Jackson. After the execution of a contract between the Elton Company and the Mississippi Power & Light Company, the Power Company filed with the Mississippi Public Service Commission its petition for a certificate of public convenience and necessity to construct the lines and install the additional equipment in order that it might render electric service from its existing lines to the named plant. Capital Electric Power Association opposed and contested the grant of such certificate. During the pendency of the cause, the Commission permitted the Mississippi Power & Light Company to make a temporary installation to the plant without prejudice to the rights of the parties. At the conclusion of the hearing, the certificate as prayed for was granted. Capital Electric appealed to the Chancery Court of Hinds County where a final decree was entered affirming the order of the

Commission. From that judgment, Capital Electric has appealed to this Court.

It is undisputed that the Mississippi Power and Light Company, following the passage of Chapter 372, Laws of 1956, on August 8, 1956, applied to the Mississippi Public Service Commission under Section 5(b) of the Act for a certificate of public convenience and necessity, and that its service area map expressly excluded the Elton area. It is also undisputed that the application and service area map of Capital Electric filed under the same authority, supra, completely surrounds and embraces the Elton area; that the closest permanent line of Mississippi Power and Light Company is .35 miles distant to the Elton plant, while Capital Electric has a line within 18 feet of this plant; and that its lines have served in this area for the past 17 years.

The Commission chose to go into lengthy and protracted hearings, after which in its final order it recited: "And it further appearing to the Commission that the evidence shows that the Mississippi Power & Light Company is ready, able and willing to serve the Elton Company with all of its electric requirements and that the Protestant Capital Electric Power Association does not have and is not in position to construct adequate facilities to efficiently serve the Elton Company and that it would be in the public interest to grant a permanent certificate of convenience and necessity to the Mississippi Power & Light Company to construct and to operate the facilities as prayed for in the petition and which are necessary to efficiently serve the said Elton Company and that it would not be in the public interest to authorize the Capital Electric Power Association to construct or extend its lines due to the excessive cost thereof and the impairment of efficiency to other customers and the aforementioned inadequacy of protestant's facilities."

The Commission approved the contract for the service as made by the Mississippi Power & Light Company with the Elton Company.

The record discloses that the Mississippi Power & Light Company introduced evidence to the following effect: The power to serve this plant will come from a common source, Mississippi Power & Light Company's South Jackson substation, and it is 4.3 miles closer to such source; its distribution lines are heavier; its lines have less exposure and its regulation is better; it is closer by about five miles with three-phase power needed in this operation; this shorter distance assures cheaper operation by several thousand dollars and will avoid duplication; its facilities are adequate, whereas Capital Electric facilities are inadequate; it can serve this plant without adversely affecting its present or prospective customers, whereas service by Capital Electric would result in serious impairment of service to its present customers. Further, Capital Electric is not experienced in handling industrial loads such as this and was not designed or established for that purpose.

Besides, the evidence shows that the Elton Company, engaged in manufacturing, expressed its preference for service from Mississippi Power & Light Company as the result of sound advice from a competent electrical engineer, and as the result of an unsatisfactory experience with Capital by its president who concluded that such a rural line would be incapable of serving the plant.

On the contrary, the evidence of Capital Electric was to the effect that it purchase electric energy from Mississippi Power & Light Company; the source of energy is about 17 miles from the Elton plant; its system is three-phase for a distance of 10 miles to Jackson Rendering Company, which it serves, and from that point it furnishes two-phase service over a distance of about 6 miles to the Blaine residence, which is only 1.2 miles from Elton; it has done considerable rephasing of its system in this area since the DeWar survey, several years ago; it would be unwise and uneconomical to re-

phase and heavy-up the system before a need therefor was reasonably apparent; the total cost of serving every requirement of the Elton plant would not be in excess of $3476.00, and that they would render the service ten percent cheaper than Mississippi Power & Light Company; its balance sheet of December 31, 1956, showed equity capital in the amount of $1,182,511.47, and that it is in a stronger financial position than Mississippi Power & Light Company.

Capital Electric assured the Commission that it was ready, willing and able to furnish all service needed and required and its recognized experts testified that it had the ability and capacity to do so in every way. To that end, it sought the opportunity to demonstrate its ability to do so. Its request was refused. The engineers and employees of the Mississippi Power & Light Company disputed Capital's ability.

At the threshold of this case, we are faced with the construction of several provisions of Chapter 372, Laws of 1956, Section 7716-04, et seq. Mississippi Code of 1942. Section 7716-05 thereof is in part as follows: "Certificate of public convenience and necessity: when required. — No person shall construct, acquire, extend or operate equipment for manufacture, mixing, generating, transmitting or distributing natural or manufactured gas, or mixed gas, or electricity, or water, for any intrastate sale, to or for the public for compensation, or for the operation of a public utility operating a business and equipment or facilities as contemplated by subsection D(3) of Section 1, of this act, without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require the operation of such equipment or facility . . . . . ."

Paragraph (b) of that Section provides as follows: "The Commission shall issue a certificate of convenience and necessity to any person engaged in the construc-

tion or operation of such equipment or facility on the effective date of this act, for the construction or operation then being conducted, without requiring proof that public convenience and necessity will be served by such construction or operation, and without further proceedings, if application for such certificate is made to the commission within six (6) months after the effective date of this act; and pending the filing of any such application and the issuance of a certificate, the continuance of such construction or operation shall be lawful. Any utility covered by this act which has heretofore been under the jurisdiction of the Mississippi Public Service Commission shall, upon application within six (6) months of the effective date of this act, be issued a certificate authorizing it to conduct operations and make extensions within any area covered by its service area map or maps on file with the Mississippi Public Service Commission on the effective date of this act.''

Paragraph (f) of that Section provides: ''The commission may, after a hearing had upon due notice, make such findings as may be supported by proof as to whether any utility holding a certificate under the provisions of this act is rendering reasonably adequate service in any area covered by such utility's certificate, and in the event the commission finds that such utility is not rendering reasonably adequate service the commission may enter an order specifying in what particulars such utility has failed to render reasonably adequate service and order that such failure be corrected within a reasonable time, such time to be fixed in such order. If the utility so ordered to correct such failure fails to comply with such order of the commission and the commission finds that cancellation of its certificate would be in the best interest of the consuming public served by the holder of the certificate, its certificate for the area affected, may be revoked and cancelled by the commission.''

It will be seen that the power is given to the Commission to determine whether or not reasonably adequate

service is being rendered by the certificate holder in its area, and to order a fulfillment of its duty in event there has been a failure; and if the said utility fails to comply with such order, the commission may revoke and cancel the certificate. Section 6 of the act, Section 7716-06, Code of 1942, provides as follows:

"Extension of service. — The commission may, after hearing, upon notice, by order in writing, require every public utility to establish, construct, maintain and operate any reasonable extension of its existing facilities within the certificated area upon findings and order that such extension is reasonable and practicable, and provided further, that in the case of gas and water a sufficient supply is available and obtainable therefor."

 █ Capital Electric Power Association is a corporation chartered and operated under Chapter 184, Laws of 1936, Section 5463, et seq., Code of 1942. It is obligated to render non-discriminatory service to persons living in the area served by it and on the routes traversed by its distribution lines, if they subscribe therefor. Capital Electric Power Assn. v. McGuffee, 226 Miss. 227, 83 So. 2d 837.

 █ Having served the electrical requirements in the Elton area for more than 17 years, Capital Electric, under paragraph (b) of Section 5, Laws of 1956, Section 7716-05, Code of 1942, acquired the right to a certificate of convenience and necessity therein, being in truth and in fact a franchise from the State. Such right is indeed a valuable one. "A non-exclusive franchise is a valuable right which can be protected in the courts." Miss. Power & Light Company v. Miss. Power District, 230 Miss. 594, 93 So. 2d 446, and authorities cited therein.

 █ It is clear from Chapter 372, Laws of 1956, that it was the intention of the legislature that facilities of one utility should not be duplicated in the same area. There is a great similarity in the declarations of this act and in the Mississippi Motor Carrier Regulatory

Act, Chapter 138, Laws of 1938, Section 7632, et seq., Mississippi Code of 1942. Cf. the "grandfather" clauses, Section 7639 and Section 7647, Code of 1942. The existing facilities were to be taken into consideration under the act, Section 7642. The manifest policy of the act is to prevent duplicating and overriding facilities and certificates. ██ █ The act, by its own terms, adopts as applicable to electric utilities the generally established rule in this State as to the other public utilities: An existing utility within the certificated area has the right and duty to provide the service, and must be given that opportunity. If it fails, the commission can award another franchise to another utility. Section 5(c) and (f) makes this clear. Hence the rule in the cases involving common carriers applies in this respect. In Tri-State Transit Company v. Dixie Greyhound Lines, 197 Miss. 37, 19 So. 2d 441, this Court, inveighing against the granting of certificates where the existing service was adequate, or could be made so, said:

"The rule is, and we find no authority to the contrary, that a certificate should not be granted where there is existing adequate service over the route applied for, and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required." This holding was reaffirmed in Dixie Greyhound Lines v. American Bus Lines, 209 Miss. 874, 48 So. 2d 584; Southern Bus Lines v. Miss. Public Service Commission, 210 Miss. 606, 50 So. 2d 149; Campbell 66 Express, Inc. v. Delta Motor Lines, Inc., 218 Miss. 198, 67 So. 2d 252; West Brothers, Inc. v. H. & L. Delivery Service, Inc., 220 Miss. 323, 70 So. 2d 870; F. & W. Express, Inc. v. Delta Motor Line, Inc., 223 Miss. 726, 78 So. 2d 887. There should no longer be any doubt as to the rule in this State on that proposition. As was said by this Court in Dixie Greyhound Lines v. American Bus Lines, supra, "If, at occasional intervals, the service is not perfect or adequate, another franchise

should not be granted, if the existing carrier is ready, willing and able to conform to such order as the commission may make in respect to additional facilities.''

As evidence of the fact that this Court, in the past, has looked upon the granting of certificates to an electric utility as falling into the same category as the granting of such certificate to a bus line or common carrier, compare the language of this Court in Mississippi Power & Light Co. v. Town of Coldwater, 234 Miss. 615, 106 So. 2d 375, where it was said: ''But, if the utility is ready, willing and able to provide service, the public ought to be able, through its regulatory bodies, to obtain proper service at reasonable cost.''

▆▆ ▆ The appellee contends that under the fourth paragraph of Section 9 of the Act, Section 7716-09, Code of 1942, the commission had the power to grant it the certificate, regardless of paragraph (b) of Section 5, supra. The lead line of the section is ''Rate Schedules'' and the last paragraph, the one in question, provides: ''The commission may provide by rules and regulations to be adopted by it, that utilities may contract with a manufacturer who is not a utility for furnishing the services or commodities described in section 1 D (1), 1 D (2), and 1 D (3) of this act for use in manufacturing, without reference to the rates or other conditions which may be established or fixed pursuant to other provisions of this act. Such regulations shall provide that before becoming effective any such contract shall be approved by the commission.''

Appellee's argument is based on the expression, ''without reference to the rates or other conditions.'' As stated, this section deals with rate schedules. It enables a utility to contract with a manufacturer without reference to prescribed rates and has reference to other conditions and factors relevant to rates. It does not authorize the commission, in approving a utilities contract with a manufacturer, to disregard the requirements of a ''grandfather's certificate'' right under Section 5

(b). One of the probable reasons for this provision by the legislature was that inducements might be held out for industrial development. It is unthinkable that the legislature threw in the expression "or other conditions" with the intention of giving to the commission the power to take away from a utility, which had been serving an area for many years, its right to do so, or to set up a competitor for it, contrary to the right which it had by paragraph (b) of Section 5 unconditionally granted to the utility. Such a strained and unauthorized construction cannot be placed upon these three words, wholly out of context. To allow the invasion of Capital Electric's area on account of the desire of Elton Company, regardless of their reasons therefor, to be served by Mississippi Power & Light Company would lay down a principle which would result in endless duplication and make a shamble of the utility act. Such a policy cannot be countenanced by this Court.

We do not pass upon the validity of the commission's Rule 7 (b), except to the extent that it is inconsistent with this decision; and to that extent it cannot supersede the requirements of the statute and the pertinent rules of law. The evidence was insufficient to warrant the commission in granting to Mississippi Power & Light Company a certificate of public convenience and necessity to serve the Elton Company and thus infringe upon the right of Capital Electric, under Section 7716-05 (b), Code of 1942, Recompiled, to do so, and in approving the contract for service, previously entered into between Mississippi Power & Light Company and the Elton Company. Consequently the decree of the chancery court is reversed, and the cause is remanded for further proceedings in conformity with the principles herein stated.

Reversed and remanded.

All Justices concur, except *Rodgers, J.,* who took no part.