# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CC-01008-SCT

*MISSISSIPPI VALLEY GAS COMPANY*

*v.*

*CITY OF PONTOTOC, MISSISSIPPI AND THE MISSISSIPPI PUBLIC SERVICE COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2000 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES L. HALFORD |
| | RICHARD WILLIAM WISE |
| ATTORNEYS FOR APPELLEES: | WILLIAM BRUCE McKINLEY |
| | DAVID C. DUNBAR |
| | GROVER CLARK MONROE, II |
| | WILLIAM L. SNEED |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 7/26/2001 |
| MOTION FOR REHEARING FILED: | 8/9/2001; denied 9/27/2001 |
| MANDATE ISSUED: | 10/4/2001 |

### BEFORE BANKS, P.J., SMITH AND WALLER, JJ.

### BANKS, PRESIDING JUSTICE, FOR THE COURT:

¶1. Here we must decide whether the Public Service Commission erred as a matter of law when it denied Mississippi Valley Gas Company certification to operate gas systems in parts of Pontotoc County because the City of Pontotoc began constructing a gas pipeline in the same area. Because we find that both municipally and investor-owned public utilities are subject to certification requirements, that the Public Service Commission's exclusive jurisdiction is not preempted by local legislation, and that the Commission's decision was against the manifest weight of the evidence, we reverse the Commission's order and the judgment of the Hinds County Chancery Court and remand.

### I.

¶2. On November 17, 1998, Mississippi Valley Gas Company ("Valley") filed a petition with the Mississippi Public Service Commission ("Commission") to serve gas to an area within Pontotoc County ("the Contested Area"). Upon learning of the petition, the City of Pontotoc ("City") intervened in the matter asserting rights granted to it in Chapter 884, 1988 Local and Private Laws of Mississippi, to serve all of Pontotoc County. The Commission granted the City's request to intervene, and the City filed a response to Valley's petition requesting that Valley's petition be dismissed with prejudice.

¶3. The Contested Area is ten (10) miles long varying in width between ½ mile to 2½ miles adjacent to

Valley's existing Service Area No. 59, granted by the Commission in December of 1988. Earlier that same year, the City of Pontotoc had determined it would extend its existing service area, however, to include all of Pontotoc County and adopted a resolution in February of 1988 requesting the Legislature to grant the City the right to serve the entire area of Pontotoc County by local and private act. Authority was thereafter obtained with the passage of S.B. 3009, 1988 Miss. Local & Private Laws ch. 884.

¶4. Notwithstanding the pending dispute before the Commission and without Commission approval or certification, the City began constructing a natural gas pipeline in the contested area. Upon learning of the City's construction, Valley filed a motion asking the Commission to temporarily enjoin the City from further construction and from serving anyone in the contested area pending the Commission's final decision in the matter. The City admitted construction but objected to Valley's motion for injunctive relief.

¶5. After a hearing on the matter, the Commission found it had jurisdiction over the parties and the subject matter and ordered the City to cease and desist from serving the contested area until it had ruled on Valley's petition, cautioning the City that continuing with construction would be "without its approval and at the City's own risk and peril." At a second and final hearing, presented with evidence of the relative experience, expertise, rules, facilities, service areas, regulatory compliance records, and gas sources, however, the Commission denied Valley's petition to expand, asserting that doing so would result in the unnecessary and uneconomic duplication of facilities. It then issued, sua sponte, a temporary certificate to the City of Pontotoc. The Chancery Court of Hinds County affirmed the Commission's order, and Valley appeals.

## II.

¶6. Administrative orders of the Mississippi Public Service Commission will not be vacated or set aside either in whole or in part, except for error of law, unless this Court finds that the order is not supported by substantial evidence, is contrary to the manifest weight of the evidence, or exceeds statutory authority. Miss. Code Ann. § 77-3-67(4) (2000). While factual findings by administrative agencies are presumed valid if based on substantial evidence, *Ohio Oil Co. v. Porter*, 225 Miss. 55, 60-61, 82 So. 2d 636, 638 (1955), no judicial deference is afforded administrative decisions concerning questions of law. *Young v. Miss. State Tax Comm'n*, 635 So. 2d 869, 873 (Miss. 1994).

### a.

¶7. The Mississippi Public Utility Act vests the Mississippi Public Service Commission with exclusive jurisdiction over the regulation of public utilities. Miss. Code Ann. § 77-3-5 (2000). The Act applies not only to investor-owned utilities but also to municipalities which operate gas utilities more than one mile from their corporate boundaries. *Id.* § 77-3-1. Pursuant to § 77-3-11 of the Act, certificates of public convenience and necessity are required before public utilities begin operation. That section reads as follows:

> No person shall construct, acquire, extend or operate equipment for manufacture, mixing, generating, transmitting or distributing natural or manufactured gas, or mixed gas, or water, for any intrastate sale to or for the public for compensation, or for the operation of a public utility operating a business and equipment or facilities as contemplated by subparagraph (iii) of paragraph (d) of Section 77-3-3, without *first having* obtained from the commission a certificate that the present or future public convenience and necessity require or will require the operation of such equipment or facility.

*Id.* § 77-3-11(1) (emphasis added). Requiring a certificate of public convenience and necessity before

construction begins allows the Public Service Commission to meet its statutory obligations: to ascertain whether all labor, materials, property and services are supplied at reasonable prices, to assign a staff, when necessary, to monitor projects, inspect construction in progress periodically, and report to the commission any variances or deviations found. *Id*. § 77-3-13(4).

¶8. The Public Service Commission's own rules, in fact, require that a facilities certificate be issued prior to constructing or operating gas facilities:

> No person shall construct, extend, acquire or operate any physical facility or plant to be used, directly, or indirectly, in the operation of a public utility except in compliance with the provisions of this rule and the act.

A facilities certificate is the "***authority of a utility to begin the construction***, acquisition or operation of additional physical facilities" for the provision of public utility services for an existing certificated area. MPSC Rules of Practice and Procedure 7C (emphasis added).

¶9. The City of Pontotoc argues that it is exempted from the certification requirement, however, per legislative grant. Under Chapter 884, Senate Bill No. 3009, city leaders claim to be "authorized and empowered, in their discretion, to construct, expand and operate the natural gas distribution system of the City of Pontotoc, Mississippi, within the entire area of Pontotoc County, Mississippi." The City, therefore, has the option, but not the obligation, to comply with the Act's certification requirements. *Croke v. Lowndes County Bd. of Supervisors,* 733 So. 2d 837 (Miss. 1999); *Brandon v. City of Hattiesburg,* 493 So. 2d 324 (Miss. 1986). The City, however, is mistaken.

¶10. Municipal exemption from certification is expressly provided for in the law. Miss. Code Ann. § 77-3-1 specifically mandates that public utilities owned or operated by a municipality shall not be subject to the provisions of the Public Utility Act, "except as to the extension of utilities ***greater than one mile outside corporate boundaries***. . . ." (emphasis added). Miss. Code Ann. § 21-27-39 (Supp. 2000) provides generally that "municipalities owning or operating any system or systems may supply consumers residing outside of and ***within five miles of the corporate limits***" with services. (emphasis added). Though we have never before interpreted the latter provision, we have said that § 77-3-1 does not act as a grant but as an exemption from regulation. *Capital Elec. Power Ass'n v. City of Canton*, 274 So. 2d 665, 669 (Miss. 1973). Construing these statutory authorities together, however, it is clear that municipalities can construct or operate gas utility systems both within one and five miles of their municipal limits. Because, however, the Public Service Commission has statutory jurisdiction to regulate rates charged by a municipality to its customers living more than one mile beyond municipal limits, since the effective date of the Public Utility Act of 1956, *id*., municipalities remain subject to its jurisdiction outside one mile of their corporate boundaries.

¶11. As the Contested Area here is more than five miles outside the City of Pontotoc's corporate limits, we can only conclude that in passing Chapter 884, the Legislature simply freed the City to exceed, under the Commission's oversight, the five-mile restriction applicable to other cities, for without Chapter 884, the City could not operate outside of a five-mile radius, even with a certificate issued by the Commission. Nothing supports the argument advanced by the City that the Legislature intended Chapter 884 to be an exclusive grant of authority to the City of Pontotoc or a preemption of the Commission's jurisdiction to regulate rates outside of the one mile boundary. In fact, we have recently held that though municipally operated public utilities are specifically exempted from Commission regulation for certificate requirements within their

boundaries and up to one mile beyond, § 77-3-1 does not grant to municipalities the "exclusive right to provide services within one mile of [their] boundaries." *Town of Enterprise v. Mississippi Pub. Serv. Comm'n*, 782 So. 2d 733, 737 (Miss. 2001).[1]

**b.**

¶12. After denying Valley's petition, the Commission, sua sponte, issued the City a temporary certificate and ordered it to apply for a permanent one within 180 days of its order. It also required the City to file rate information and its policy on service extensions. We can only conclude, therefore, that the Commission did not completely ignore its statutory obligations to issue certificates to utilities. Perhaps persuaded by the City's argument that an unfavorable ruling would jeopardize a multimillion dollar gas facility constructed in good faith reliance on Chapter 884 as well as greatly prejudice the City, its bondholders and its taxpayers, the Commission attempted to right the wrong. We are not so persuaded.

¶13. It is unwise for any litigant to take costly steps in anticipation of a favorable ruling by this Court. We have warned that litigants who do so assume the risk. *St. Dominic-Jackson Mem'l Hosp. v. Miss. State Dep't of Health*, 728 So. 2d 81 (Miss. 1998). In *St. Dominic-Jackson*, for example, a thirty-million dollar hospital was closed when it was constructed while its certificate was still being challenged in the courts. There, we said:

> The fact that a litigant has taken such costly steps in anticipation of a ruling by this Court should not, of course, affect the course of this Court's deliberations. To do otherwise would be to abdicate our role as highest court of this State. It is our hope that MMC's motivation in building the North Campus project prior to our decision was not to present this Court with a *fait accompli* which we would be unwilling to disturb.

*Id.* at 92. Though we hope the same holds true here for the City of Pontotoc, the fact that it constructed the pipeline should not have affected the Commission's decision to grant or deny Valley certification. The Commission's order, however, clearly shows that it did as evidenced by its finding that granting Valley's petition would result in the "uneconomic and unnecessary duplication of facilities" in light of the fact that the "City has already constructed facilities in the [Contested Area]."

¶14. In challenging this finding, Valley points to our holding in *Capital Elec. Power Ass'n v. Miss. Power & Light Co.*, 240 Miss. 139, 125 So. 2d 739 (1961). There, the Commission allowed the defendant to temporarily install equipment to a manufacturing plant in the plaintiff's certificated area. In reversing the decision, we held that an existing certificated utility in the disputed area, has the right and duty to provide services, and thus must be given the opportunity to do so. Only if the existing utility fails, can the Commission then award franchise to another utility. The underlying policy being, that the Legislature intended to prevent duplicating facilities and certificates. *Capital Electric*, however, is distinguishable because the Contested Area here was not served by Valley or the City of Pontotoc at the inception of the controversy. The underlying policy, proscribing duplication and, arguably, presupposing certification, nevertheless, is still important.

¶15. An equally important policy, however, is that expressly outlined by the Legislature in Miss. Code Ann. § 77-3-2(1)(d)(2000)-- that public utility rates will be provided "without unjust discrimination, *undue preferences or advantages*, or unfair or destructive competitive practices and consistent with long-term management and conservation of energy resources by avoiding wasteful, uneconomic and inefficient uses of

energy." (emphasis added). To these ends, the Legislature has delegated the Public Service Commission with these responsibilities. *Id.* § 77-3-2(2). Its actions here, however, run counter to this policy, establishing dangerous precedent whereby utilities building facilities in disputed areas, without authority, enjoy the advantage over the utility which seeks certification first.

¶16. Even if we were to accept the City's claim that it relied on Chapter 884 in good faith, it cannot defend the lack of good faith shown in constructing a pipeline while the matter was still in litigation. Municipal and investor-owned facilities alike are required to obtain certificates of public convenience and necessity before operating or constructing public utilities, unless exempted by law. Because we conclude that the City of Pontotoc was not exempted here and the Commission erred as a matter of law in failing to adhere to its statutory and procedural obligations, Miss. Code Ann. § 77-3-11, § 77-3-14(4)(2000); Rule, MPSC Rules of Practice & Procedure 7C, we reverse its ruling.

### III.

¶17. Administrative factual findings are presumed valid if based on substantial evidence. ***Ohio Oil Co. v. Porter***, 225 Miss. at 60-61, 82 So. 2d at 638. Both Valley and the City contend they are better positioned to serve the Contested Area because they are closer. The issue, however, is not one of proximity but which utility is better equipped to serve the area. Because it had lower rates, more expertise, followed filing requirements, and no accurate customer preference was shown, Valley argues it was the better entity and the Commission's decision to deny certification was not supported by the evidence. We agree.

¶18. At minimum, Valley's capabilities should have been compared with that of the City of Pontotoc before construction on the gas pipeline began. Evidence was presented regarding which utility had more expertise. Valley put on proof that it operates over 5750 miles of pipelines serving over 250,000 customers in 108 communities and three counties, with extensively trained full-time employees, engineers, construction, and service personnel available not only for day-to day operations, but for emergency situations as well. The Commission's order, however, mentions only that the City has the experience necessary to provide gas service, has been extending lines yearly, and has a diverse supply of gas. Second, by the City's own admission, its customers paid anywhere from twenty-three to thirty-one percent higher rates than Valley's customers in 1996 and 1997. In addition, although residents in the Contested Area signed a petition requesting gas service from the City, residents were not fully informed of Valley's lower rates. They were simply asked to sign if interested in the City providing gas service. This Court has indicated that allowing a company to build facilities in an area because of the customer's preference would "lay down a principle which would result in endless duplication and make a shamble of the utility act." ***Capital Elec. Power Ass'n***, 240 Miss. at 153, 125 So. 2d at 744. Further, Valley in filing for a certificate provided the necessary information required by the Commission's rules: descriptions of new facilities, itemized estimates of costs of new investments, and number or prospective customers, (see Rule 7B and Appendix "A" Schedule 2 of MPSC Rules of Practice and Procedure) whereas the City merely intervened in Valley's petition for certification, began construction, and retrospectively attempted to prove itself worthy.

### IV.

¶19. For the foregoing reasons, we conclude that the Commission's decision was not supported by substantial evidence. Its determination that the City of Pontotoc was the better entity appears, rather, to have been entirely based on the City's construction of the pipeline while the matter was still pending. We, therefore, reverse the Commission's order and the judgment of the Hinds County Chancery Court, and we

remand this case to the Mississippi Public Service Commission with instruction to grant Valley's original petition.

¶20. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. The City claims that it has never admitted that it was required to yield to the Commission's jurisdiction. It simply submitted to the Commission's oversight of its rates, since it shared the Commission's interest in serving and protecting its customers. As the Commission's final order expressly found jurisdiction and the City of Pontotoc has failed to cross appeal on that finding, Miss. Code Ann. § 77-3-67 (2000), we find this contention to also be without merit.