WALLER, CHIEF JUSTICE,
FOR THE COURT:
¶ 1. The motion for rehearing is granted. The original opinions are withdrawn and these opinions are substituted therefor,
¶ 2. The Mississippi Public Service Commission (MPSC) adopted a rule requiring utilities to waive utility deposits for certified domestic violence victims for a period of sixty days. The rule also required the utilities to keep the information regarding the domestic violence victims confidential and established penalties for violating that confidentiality. The Mississippi Rural Wa *290 ter Association, Inc. (“Water Association”) appealed to the Hinds County Chancery Court objecting to the promulgation of the new rule, but the chancery court affirmed the MPSC’s decision. We find that the MPSC lacks statutory authority to adopt any rule regulating the rates of nonprofit water utility associations and corporations. Accordingly, we reverse the order adopting the new rule and remand this case to the MPSC for proceedings consistent with this opinion.
PACTS AND PROCEDURAL HISTORY
¶ 3. In June 2013, the MPSC declared its intent to consider the adoption of a Rule of Practice and Procedure regarding the waiver of initial utility deposits for domestic violence victims. The original proposed rule stated:
A customer or applicant that has been determined to be a victim of domestic violence by a domestic violence program, by law enforcement personnel, by the office of a District Attorney, or by the office of the Attorney General, shall be exempt from public utilities’ initial deposit requirements as established in that utility’s tariff. This determination shall be evidenced by submission of a certification letter to the utility. The certification letter must be printed on the letterhead of the certifying agency or accompanied by a letter on agency letterhead identifying the certifying individual. The utility shall deem the certification letter and the contents thereof as confidential. The certification letter expires after ninety (90) days.
By its terms, this rule applies to all public providers of water service, both for-profit and nonprofit. Because the proposed rule would affect the MPSC’s existing rules governing public utility service, the MPSC sought comment on the rule from all interested parties and public utilities. In October 2013, the MPSC filed a scheduling order regarding the due date for further comments or testimony regarding the proposed rule, set a public hearing for December 2013, and attached an Economic Impact Statement (EIS).
¶ 4. The Water Association is a Mississippi nonprofit corporation and operates as a trade association representing more than 500 water and/or sewage disposal companies, most of which are nonprofit corporations. The Water Association moved to intervene on behalf of its nonprofit members and submitted multiple comments to the proposed rule, including expert affidavits by engineer James A. Elliott. In its comments, the Water Association argued, among other things, that Section 77-3-5 of the Mississippi Code prohibited the MPSC from regulating nonprofit utilities’ rates or internal affairs. It also argued that the MPSC had failed to comply with the requirements of the Mississippi Administrative Procedures Act because the EIS filed with the proposed rule was deficient.
¶ 5. The public hearing on the proposed rule ultimately was scheduled for August 5, 2014. On July 28, 2014, the MPSC sent counsel for the Water Association a draft of the new proposed rule, which included substantial changes from the original proposal:
A customer or applicant that has been determined to be a victim of domestic violence by a domestic violence program shall be exempt from public utilities’ initial deposit requirements, as established in that utility’s tariff, for a period of sixty (60) days. This determination shall be evidenced by submission of a certification letter to the utility. The certification letter must be printed on the letterhead of the certifying agency or accompanied by a letter on agency letterhead identifying the certifying in *291 dividual. The certification letter expires after ninety (90) days.
The utility shall deem the certification letter and the contents thereof as confidential. Any employee, contractor, volunteer or agent of a public utility in possession of information which would tend' to identify a victim of domestic violence, who discloses any information that is exempt from disclosure under the Mississippi Public Records Act of 1983, or makes any observation or comment about the identity or condition of any person admitted to a shelter or receiving services of a shelter, unless directed to do so by an order of a court of competent jurisdiction, shall be subject to all applicable penalties imposed by Mississippi law for violation of Commission rules and, in addition, shall be civilly liable to the person whose personal information was disclosed in the amount of Ten Thousand Dollars ($10,000.00), plus any compensatory damages that the individual may have suffered as the result of the disclosure and any penalties imposed.
In addition to adding a penalty to the confidentiality provision, the new language changed the complete deposit exemption to a temporary, sixty-day waiver. After reviewing the new language, the Water Association submitted additional comments and a new affidavit by Elliot analyzing the new language in the proposed rule.
¶ 6. The public hearing was held on August 5, 2014. The Water Association and several other utility associations appeared at the hearing and opposed the new rule. On September 9, 2014, the MPSC unanimously passed a final order adopting the rule temporarily waiving deposits for domestic violence victims. The final rule, which applies to nonprofit water associations, states:
1. TEMPORARY WAIVER OF DEPOSIT A customer or applicant that has been determined to be a victim of domestic violence by a domestic violence shelter, .as defined in Miss. Code Ann. § 93-21-101 (2014), shall be exempt from public utilities’ initial deposit requirements, as established in that utility’s tariff for new accounts at existing service locations, for a period of sixty (60) days. This determination shall be evidenced by submission of a certification letter to the utility. The certification letter must be printed on the letterheád of the certifying agency or accompanied by a letter on agency letterhead identifying the certifying individual. The certification letter expires after ninety (90) days.
2. CONFIDENTIALITY OF CERTIFICATION LETTER The utility shall deem the certification letter and the contents thereof as confidential. Any employee, contractor, volunteer or agent of a public utility in possession of information which would tend to identify a victim of domestic violence, who discloses any information that is exempt from disclosure under the Mississippi Public Records Act of 1983, or makes any observation or comment about the identity or condition of any person admitted to a shelter or receiving services of a shelter, unless directed to do so by an order of a court of competent jurisdiction, shall be subject to all applicable penalties imposed by Mississippi law for violation of Commission rules, and in addition, shall be civilly liable to the person whose personal information was disclosed in the amount of Ten Thousand Dollars ($10,000.00), plus any compensatory damages that the individual *292 may have suffered as the result of the disclosure and any penalties imposed.
The Water Association applied for rehearing, which the MPSC denied.
¶ 7. The Water Association then appealed the MPSC’s decision to the Hinds County Chancery Court on behalf of its nonprofit members, arguing that: (1) the MPSC lacks jurisdiction over the governance, management, or other internal affairs of the members of the Water Association and thus lacked jurisdiction to apply the rule to them; (2) the MPSC lacks authority to regulate the rates and rate-collection procedures, including deposit procedures, of the members of the Water Association and thus lacked authority to apply the rule to' them; (3) the MPSC violated the Administrative Procedures Act by adopting a final rule that differed from the proposed rule in a manner not allowed under the Act; (4) the MPSC violated the Administrative Procedures Act’s provisions governing consideration of the economic impact of a rule; and (5) the MPSC erred by allowing the members of the Water Association and their employees to become subject to civil and criminal liability for violation of the rule.
¶8. The chancery court affirmed the MPSC’s adoption of the rule, reasoning that a deposit is not included in the definition of “rate” or “rate structure,” remains the property of the customer unless a debt is incurred, and is within the utility company’s discretion to impose. The chancery court also found no violation of the Administrative Procedures Act. It concluded that the final rule was the logical result of comments filed by. interveners and simply incorporates existing Mississippi law. The chancery court declined to find the EIS insufficient as a matter of law.
¶ 9. On appeal to this Court, the Water Association raises. nineteen issues which essentially track, the- issues raised' in its appeal to the chancery court. We find one issue to be dispositive: whether the MPSC lacked statutory authority to adopt the rule in question because nonprofit.corporations, and associations are not subject to MPSC regulation of rates. Accordingly, it is .unnecessary to address the remaining issues.
STANDARD OF REVIEW
¶ 10. When this Court reviews a chancellor’s ruling concerning an administrative agency decision, we apply the same standard of review as the chancellor. Miss. Comm’n on Envtl. Quality v. Chickasaw Cty. Bd. of Supervisors, 621 So.2d 1211, 1216 (Miss. 1993). This Court has the authority to reverse the decision of the PSC if we find that it (1) was not supported by substantial evidence, (2) is arbitrary or capricious, (3) was beyond the PSC’s power to adopt, or (4) violates of some constitutional or statutory provision. Town of Enterprise v. Miss. Pub. Serv. Comm’n, 782 So.2d 733, 735 (Miss. 2001). “It is clear under Mississippi law that an administrative agency cannot exceed the scope of authority which was granted to it by the legislature.” Miss. Bd. of Nursing v. Belk, 481 So.2d 826, 829 (Miss. 1985) (citations omitted). “Further, the Commission’s authority to interpret the statutes under which it operates may not supersede the requirements thereof, nor may it conflict with pertinent rules of law,” State ex rel. Pittman v. Miss. Public Serv. Comm’n, 520 So.2d 1355, 1358 (Miss. 1987) (citing Capital Electric Power Ass’n v. Miss. Power & Light Co., 240 Miss. 139, 125 So.2d 739, 744 (Miss. 1961)).
discussion'
¶ 11.: The Mississippi Legislature has vested the MPSC with “exclusive original jurisdiction over the intrastate busi *293 ness and property of public utilities.” Miss. Code Ann. § 77-3-5 (Rev. 2009). However, the MPSC does not have the authority “to regulate the rates for the sales and/or distribution ... [o]f water or sewage disposal service of nonprofit corporations or associations where the governing body ... is elected. by the consumers thereof or appointed by the county board of supervisors[.]” Id. at § 77-3-5(c) (emphasis added). Under the specific language of Section 77-3-5(c), the MPSC does not have the authority to adopt rules regulating the Water Association members’ rates for the sale and distribution of water and sewage disposal services. The Water Association argues that the rule in question violates Section 77-3-5 because customer deposits are included in the rate-setting process and the rule’s deposit-waiver requirement therefore has a direct impact on its members’ rates. Thus, the critical question before this Court is whether-customer deposits are included within .the definition of the term “rate” in Section 77-3-5.
¶ 12. The Legislature has specifically defined term “rate” as it is used in the Public Utilities Act:
The term “rate” means and includes every compensation, fare, toll, rental and classification, or the formula or method by which such may be determined, or any of them, demanded, observed, charged or collected by any public utility for any service, product or commodity described in this section, offered by it to the public, and any rules, regulations, practices or contracts relating to any such compensation, charge, fare, toll, rental or elassification[.]
Miss. Code Ann. § 77-3-3(e) (emphasis added). The MPSC admits that Section 77-3-3(e) “broadly defines ‘rate.’” Indeed, this definition encompasses not only the typical usage of the term “rate"—“the unit cost of a service supplied to the public by a utility”[1]—but also includes the “formula or method” by which the compensation is determined, as well as “any rules,, regulations, practices or contracts relating to any such compensation^]” Id. When read in conjunction with this definition, Section 77-3-5 prohibits the PSC from regulating not only the amounts charged by nonprofit public utilities for their services, but also the formula used to calculate that amount and any rules or regulations related to this process.
¶-13. The MPSC attempts to create a distinction between a “rate” and a “deposit” by arguing that the former is compensation for a service rendered while the latter is a precondition or security to receiving service. The MPSC claims that because customer deposits are collected before any sales occur and before service is rendered, they do not constitute “rates for the sales and/or distribution” of water under Section 77-3-5. But this argument is belied by the broad language of Section 77-3-3(e) and the MPSC’s prior interpretations of the term “rate.” The Water Association presented evidence of a prior proceeding before the MPSC in which' a 1992 subdivision ordinance of the City of Meridian was challenged as violating the MPSC’s regulatory authority under the Public Utilities Act. The ordinance at issue required utility providers to install underground utility service at no cost to the owner or developer of land being subdivided, unless the utility provider could prove beyond a reasonable doubt that the cost of underground service was not economically feasible over a twenty-year time span. Citing Section 77-3-3(e), the MPSC found *294 that the term “rate” is broadly defined to include not only the charge itself, but also the formula by which the charge is determined and any rules and regulations relating to the charge. The MPSC then determined that the ordinance “clearly attempts to establish both the method to determine the charge and the charge itself; i.e., at no cost.” The MPSC also found that “[t]he manner of service also directly affects the costs to the utility and thus the rates the utility will charge.” Accordingly, the MPSC concluded that the ordinance constituted a rate, which infringed on its exclusive authority over utility regulation.
¶ 14. At first glance, it would appear that the ordinance described above does not fit within the most narrow dictionary definition of the term “rate.” However, the MPSC found that the ordinance fit squarely within the definition provided in Section 77-3-3(e) because the requirement of providing underground utility service at no cost would have an obvious and substantial effect on the formula by which the utility provider determined the rates it would charge to its customers. The same is true here. As set forth in the affidavit of James Elliot, which was presented to the MPSC and the chancery court, a public utility’s tariff generally includes the utility’s rate and charges for service, including initial deposits, service extension policies, and regulations unique to each company. In addition, the Water Association presented evidence of another utility company’s application to the MPSC to increase its rates, the formula for which included customer deposits. As with the ordinance described above, the MPSC’s rule in this case has an obvious effect on utility companies’ rate-setting formulas. The critical distinction in this case, however, is that the MPSC does not have statutory authority to regulate tlje rates of nonprofit water associations, and the rule in question directly applies to them.
¶ 15. The MPSC also argues that the rule affects only the timing of the deposit payment. But the MPSC’s attempt to regulate the payment of customer deposits, which are embedded in the rate-making process, would do more than impact the timing of payment. As the Water Association sets out in its brief, collecting a timely deposit plays an integral role in a water association’s ability to (1) determine the amount of the deposit and protect against bad debts, (2) ensure that the deposit is paid since services already would be provided, and (3) protect itself against losses arising from customers’, especially transient customers’, failure to pay for services.
¶ 16. We find that Section 77-3-3(e) includes customer deposits in the definition of the term “rate” as it is used in the Public Utilities Act, and Section 77-3-5 prohibits the MPSC from making rules that regulate the rates of the Water Association’s members. Accordingly, the MPSC lacked authority to adopt the rule in question. Because the MPSC did not have authority to adopt this rule, it is unnecessary for us to address the Water Association’s arguments concerning the MPSC’s compliance with the Administrative Procedures Act.
CONCLUSION
¶ 17. For the foregoing reasons, we reverse the judgment of the chancery court and the order of the MPSC adopting the deposit-waiver rule, and we remand the matter to the MPSC for proceedings consistent with this opinion.
¶ 18. REVERSED AND REMANDED.
RANDOLPH, P.J., COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION *295 JOINED BY DICKINSON, P.J., AND KITCHENS, J. CHAMBERLIN, J., NOT PARTICIPATING.

. Rate, Black’s Law Dictionary 1452 (10th ed. 2014). This narrow definition and the other dictionary definitions cited by the MPSC are irrelevant to the instant case, as the Legislature has defined the term “rate” .as used in the Public Utilities Act.